CHARLES L. MULL & SONS, Appellants, v. JAMES DOOLEY, JR., *et al.*, Appellees.

1. **Chattel Mortgages:** DELIVERY. A debtor having agreed to execute a chattel mortgage to a creditor, and have the same recorded, the latter requested a notary to draft the mortgage, and leave it with the mortgagor. The amount to be secured was given to the notary, but nothing was said as to what property the mortgage was to cover. Before the mortgage was executed the mortgagee left for his home in another part of the state, and the mortgage remained in the hands of the notary for about three months, when it was handed to the mortgagor, who delivered it to the mortgagee, and it was then recorded. *Held*, that there was no delivery of the mortgage until it was received by the mortgagee.

2. ——: WITHHOLDING FROM RECORD: FRAUD. The mere failure to file a chattel mortgage for record will not render such mortgage fraudulent as against subsequent creditors, in the absence of any agreement or understanding between the mortgagor and mortgagee that the same should be so withheld for the purpose of enabling the mortgagor to obtain further credit.

*Appeal from Keokuk District Court.*—HON. A. R. DEWEY, Judge.

SATURDAY, OCTOBER 14, 1893.

ACTION to foreclose certain chattel mortgages. The facts are stated in the opinion of the court.—*Affirmed.*

*Mackey & Stockman*, for appellants.

*G. D. Woodin* and *Ed. Jackson*, for appellees,

KINNE, J.—The defendant Dooley was, in 1889, and up to January 7, 1890, in the business of merchandising at What Cheer, Iowa. Prior to October 1, 1889, he became indebted to appellee Gillfoy (his father-in-law) for money loaned. On October 1, 1889, it was agreed and understood between them that Dooley should secure his indebtedness to Gillfoy by executing a chattel mortgage. Dooley was to have said mortgage executed, and to file it for record. Gillfoy requested Beem, a notary public, to draft the mortgage, and leave it with Dooley after it was executed. Gillfoy told the notary the amount to be put in the note, but said nothing to either him or Dooley as to what property the mortgage was to cover. Prior to the execution of the note and mortgage, Gillfoy went to Monroe county, Iowa, where he was engaged in business until January 1, 1890, and had no knowledge until the latter date as to whether the note and mortgage had in fact been executed. Dooley did execute the note and mortgage before Beem on October 2, 1889, and was handed the mortgage by Beem. Dooley, however, failed to record the mortgage, and on January 1, 1890, handed it to Gillfoy, who filed it for record January 2, 1890. The note appears to have remained in Beem's hands until January 1, 1890. Prior to January 1, 1890, Gillfoy did not know that Dooley was in failing circumstances. The note was for eight hundred and one dollars and forty cents, and drew ten per cent. interest, and the mortgage covered all of Dooley's stock of goods, and further additions to same, and store fixtures, horses, wagons, and book accounts, then owned by him. January 6, 1890, Dooley executed and delivered to Mull & Sons a chattel mortgage on his stock of goods only, to secure two hundred and forty dollars and fifty-eight cents, with ten per cent. interest. At the time of taking this mortgage, Mull & Sons had actual as well as record notice of Gillfoy's mortgage. On the same day the

Spencer Company took a chattel mortgage from Dooley to secure four hundred and ninety-seven dollars and sixty-five cents, with ten per cent. interest. This mortgage covered the same stock as the others; also store fixtures and future acquired stock and fixtures; also small book accounts and notes, a wagon, a set of harness, and two horses. The last two mortgages were filed for record the day of their execution. January 7, 1890, Gillfoy and the Spencer Company seized the property covered by their mortgages, and attempted to foreclose by notice and sale. January 16, 1890, an injunction issued on a bill in equity filed by Mull & Sons, and the sale was restrained, and proceedings transferred to the district court. A receiver was appointed, and he took possession of, and sold, the stock of goods, store furniture, and fixtures. Under the issues as finally made in the district court all parties conceded that Baxter & Aldinger had a first lien for rent in the sum of eighty-nine dollars and forty-three cents on the fund in the receiver's hands. Mull & Sons claimed a first lien on said fund, subject only to the rent claim. Their claim is conceded by the Spencer Company. The Spencer Company claim a first lien on the proceeds of sale of the horses, harness, and wagon, and on proceeds of notes, accounts, and a county warrant collected, and a lien on the stock, subject to Mull & Sons and the rent claim only. The appellants' claim to priority is based on the failure to record the Gillfoy mortgage until January 2, 1890; also on a claim that such failure to record was the result of an agreement between Dooley and Gillfoy, entered into in order to aid Dooley in obtaining credit; that the appellants were misled thereby, and induced to sell the goods for which they are now seeking pay; that they had no actual notice or knowledge of the Gillfoy mortgage until January 6, 1890. The appellee claims his mortgage is a first lien on the property described therein, subject only

to the rent claim; that the mortgage, though made in October, 1889, was not in fact delivered until January 1, 1890; that it was given for a *bona fide* debt, and without fraud. The court found that Baxter & Aldinger were entitled to the first lien on the funds in the receiver's hands; that appellee's mortgage was a second lien on said funds, and that the fund was not sufficient to pay said claim in full; that the Spencer Company were entitled to have applied upon their claim the proceeds of sale of harness, the amount collected on the notes and accounts, and the county warrant. Judgments were rendered in each case.

I. The appellants contend that the Gillfoy mortgage was delivered when it was executed and handed to Dooley. We think the delivery took place on January 1, 1890, when the mortgagor handed the mortgage to Gillfoy. The question of delivery is always one of intention of the parties, to be gathered from all the facts and circumstances. Nor is the delivery completed without an acceptance on the part of the grantee. Now, to accept the benefit of an act done one must have knowledge that the act has been done, and approve of it. If, as in this case, Gillfoy did not know what property was to be mortgaged, and did not in fact know that the mortgage had been executed, how can it be claimed that he accepted the mortgage? In *Cobb v. Chase*, 54 Iowa, 253, the intervenor, Rhodes, was a creditor of Chase. It was agreed that Chase should execute to intervenor a chattel mortgage upon some stock, not specifically pointed out or agreed upon. In pursuance of the agreement, Chase, in the absence of the intervenor, executed to him a chattel mortgage upon some cows and steers, and filed the same for record. Afterward the plaintiff levied an attachment upon the mortgaged property, and after the levy the intervenor came into possession of the mortgage, though he knew before

*1. CHATTEL mortgages: delivery.*

that it had been made and recorded. It was held he could not hold the property as against the attaching creditor. The court said: "But the agreement in this case was merely that a mortgage should be given upon a certain kind of property. No one specific piece of property was agreed upon, nor even the quantity. The agreement, then, was far less definite than the mortgage, and being so, we do not see how it can be construed as equivalent to an acceptance of the mortgage." See *Day v. Griffith*, 15 Iowa, 104. We need not discuss the many cases cited by counsel touching this question of delivery, as in our view its decision is not material to a determination of the case.

II. If it be conceded that the Gillfoy mortgage was delivered when executed and handed to Dooley, and it was withheld from record until January 1, 1890, and that the appellants, without notice of its existence, extended credit to Dooley after its execution and prior to its being filed for record, which they would not have done had they known the goods were then mortgaged, and if meantime Dooley retained possession of the mortgaged goods, and disposed of them in the usual course of business, without accounting to the mortgagee therefor, still such facts alone would not render the Gillfoy mortgage fraudulent as against the appellants' mortgages. This court has never held that the mere withholding of a chattel mortgage from record would of itself render it fraudulent as to creditors who became such after the execution and before the filing of the mortgage. It is insisted that the case at bar is in its facts like *Goll & Frank Co. v. Miller*, 87 Iowa, 426. In that case the mortgage was kept from record, by agreement of the parties, for the purpose of enabling Miller to obtain further credit, and it was held that when credit had been extended under such circumstances the mortgagee would not be permitted to enforce his mortgage as

2. ——: withholding from record: fraud.

against those who had extended credit to the mortgagor. In the case at bar there is no evidence whatever that the Gillfoy mortgage was kept from record by virtue of an agreement or understanding had between the parties, or upon the suggestion or request of the mortgagor. We are not prepared to extend the rule, and hold that a mere failure to record a mortgage, under such circumstances as are disclosed in this case, will render it fraudulent as to creditors of the mortgagor.

In no event can the appellants recover. *First.* No delivery of the Gillfoy mortgage prior to January 1, 1890, is shown. *Second.* If the mortgage be regarded as delivered at its date, no agreement or understanding to withhold it from record has been established. The judgment of the district court is AFFIRMED.