The American Lead Pencil Company *et al. v.* Mary E. Champion *et al.*

No. 8681.

1. CHATTEL MORTGAGE—*given in good faith, withholding from record only affects priority.* The withholding of a chattel mortgage from record may cast suspicion upon the good faith of the indebtedness which it is given to secure, but good faith being admitted or shown, the only effect of a failure to file it for record is to render it void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, until it is filed for record or actual possession taken under it.

2. ———— *recording not necessary as to subsequent mortgagee with actual notice.*—*Subsequent mortgagee cannot attack what does not prejudice him.* As to a chattel mortgagee having actual notice of a prior mortgage upon the same property, it is immaterial whether the prior mortgage was recorded or not;

and where the interests of the subsequent mortgagee could not have been prejudiced by the manner in which the mortgagor was permitted to deal with the mortgaged property, such subsequent mortgagee cannot successfully attack the validity of the prior mortgage on that account.

*Error from Sedgwick District Court.*

*Hon. C. Reed, Judge.*

AFFIRMED.                    OPINION FILED NOVEMBER 7, 1896.

ON and before June 6, 1890, Charles T. Champion was engaged in the wholesale and retail book and stationery business at Wichita. On that day, being indebted to the Wichita National Bank in the sum of $6,500, evidenced by several promissory notes, he executed to said Bank a collateral note for that amount and secured the same by a chattel mortgage on his entire stock of books, stationery, fixtures and accounts, with the understanding that the same should not be filed in the office of the Register of Deeds of Sedgwick County, and that its existence should not be publicly known but should be kept a secret between the parties; and said chattel mortgage was never filed for record. From June 6 to December 4, 1890, the Bank allowed Champion to keep his account with it and deposit the proceeds of the sale of goods, and check upon the same without restriction. During the same time, the Bank loaned him a large additional amount of money, in the aggregate sufficient to increase the original indebtedness to the sum of $8,260. On December 6, 1890, the Bank demanded security for the whole amount; and Champion executed and delivered to the Bank his collateral promissory note for that amount to cover the several original notes held by the Bank and maturing at different dates, and, at the same time, executed to the Bank a chattel mortgage on his entire stock of goods and the shelving, fixtures, notes and

23—57 KAN.

accounts to secure said indebtedness.   At that time it was agreed between the Bank and Champion that the Bank should have possession of said stock of goods as security under said mortgage, and that Champion should remain in possession as the agent of the Bank and should account to it for all moneys received upon the sale of goods ; and that the Bank should have power to place any other agent in charge if deemed necessary. ˙The mortgage of June 6, 1890, was delivered up to Champion.   Notwithstanding said agreement and the several demands made by the Bank for a compliance therewith, Champion continued the business in substantially the same manner as before, using the proceeds of sales for the payment of the claims of commercial creditors and the expenses of the business ; and, on December 20, the Bank made another positive demand upon Champion for the sum due, but Champion claimed that he was unable to pay the indebtedness. Champion was indebted to his mother, Mary E. Champion, in the sum of $8,400, and to his sister, Hattie C. Crozier, about $4,400.   Mrs. Champion resided at Wichita and Mrs. Crozier in Oklahoma.   Champion informed his mother that the Bank would not wait any longer upon him ; and thereupon Champion proposed to give to his mother and his sister each a chattel mortgage upon the same stock to secure their claims, and this was done on December 22, 1890 — Champion having telegraphed to his sister and she having by telegraph employed a firm of attorneys at Wichita to protect her interests.   Each of said mortgages contained the following clause : ''A chattel mortgage in the amount of $8,400 was executed on the above stock of goods to the Wichita National Bank on the —— day of December, 1890.''   These mortgages were filed in the office of the Register of Deeds in Sedgwick County

on the same day, within a few minutes after 12 o'clock. Frank L. Champion, a brother of Charles T. Champion, was appointed by .his mother and the agent of his sister to take charge of said stock of goods under said chattel mortgages, and he did so within a few minutes after they were filed; but the store was not closed and business was being conducted in about the same manner as before, when, during the course of the afternoon, the Bank, having filed its mortgage for record at 2:15 P. M., took the possession away from said Frank L. Champion without further resistance than a protest by him; and he left the store voluntarily, and the Bank closed it up.  On December 24, 1890, Mary E. Champion filed her petition against Charles T. Champion, the Wichita National Bank and Hattie C. Crozier to foreclose her mortgage and to have the same declared a first lien upon said personal property, and for the appointment of a receiver to take charge of and control said property and to sell and dispose of the same under the direction of the Court; and, on the same day, by consent of all the parties, M. J. Oliver was duly appointed receiver.

Many of the commercial creditors of Charles T. Champion obtained judgments against him before justices of the peace and in the District Court, and were allowed to intervene and become parties to said action with a view to the protection of their interests in the proceeds obtained and collected by the receiver. The goods for the value of which they obtained judgments were all sold by them to Champion between June 6 and December 22, 1890.  For the purpose of obtaining credit, Champion made statements to certain commercial agencies showing the amount of his assets and further stating that there was no mortgage upon the same.  The Bank did not know that said

false representations had been made, and it did not at any time attempt to mislead or deceive the creditors, unless the failure to record its mortgages had that effect. All the claims of the commercial creditors and of the several mortgagees were *bona fide* as between them and Charles T. Champion.

The Court below awarded to the Bank the first lien, to Mrs. Champion the second, and to Mrs. Crozier the third, postponing the claims of all the commercial creditors thereto, and they bring the case here for review. Mary E. Champion and Hattie C. Crozier also filed cross-petitions in error, claiming priority over the lien of the Bank.

*J. V. Daugherty*, and *Adams & Adams*, for plaintiffs in error.

*Wall & Brooks*, for Champion and Crozier, cross-petitioners in error.

*Fred W. Bentley*, and *David Smythe*, for defendant in error, the Wichita National Bank.

MARTIN, C. J. I. We do not feel called upon to decide whether the judgment creditors stand in a position to question the validity of the several chattel mortgages, each of which was given to secure a *bona fide*, although a preexisting, debt. If they secured liens upon the fund in the hands of the receiver, certainly they were subsequent in time to the recording of the chattel mortgages. It cannot be held as a matter of law that the entire failure of the Bank to file its mortgage of June 6, 1890, and the delay in filing that of December 6 until December 22, 1890, operated as a fraud upon creditors who relied on the false representation of Champion that his stock was not mortgaged. The mortgage of June 6 was never

operative as against creditors ; and that of December 6 was void as to them until December 22, 1890, unless the Bank is to be treated as having the possession of the store from December 6 until December 22.  ¶ 3903, Gen. Stat. 1889.  If the commercial creditors had obtained liens on or prior to December 22, they would be in a position to question any antecedent rights claimed by the Bank ; but, on December 22, the Bank not only recorded its mortgage but also took actual possession of the store.  At that time the plaintiffs in error were only simple contract creditors of Charles T. Champion, while the Bank not only held a mortgage then recorded but actual possession under it.  The withholding of a chattel mortgage from record may cast suspicion upon the good faith of the indebtedness which it is given to secure ; but good faith being admitted or shown, the only effect of a failure to file it for record is to render it void as against the creditors of the mortgagor and as against subsequent purchasers and mortgagees in good faith until it is filed for record or actual possession taken under it.  *Cameron, Hull & Co. v. Marvin*, 26 Kan. 612 ; *McVay v. English*, 30 id. 368, 371 ; *Sedgwick City Bank v. Mercantile Co.*, 45 id. 346 ; *Cagnon v. Brown*, 47 id. 83, 85.

II. Mary E. Champion and Hattie C. Crozier, as well as the commercial creditors, attack the validity of the mortgage to the Bank on the ground that Charles T. Champion was permitted to conduct the store and dispose of the proceeds of sales in his own way, and that the recording of their mortgages and taking possession thereunder were prior in point of time to the recording of the mortgage of the Bank and the possession of the Bank under the same.  This claim is not tenable.  They had actual knowledge of the prior mortgage, and as to them it was immaterial

whether that mortgage was recorded or not; and they could not have been prejudiced in any way by the manner in which the business was conducted between Charles T. Champion and the Bank. They had no lien, even as against Charles T. Champion, until December 22; and immediately after they obtained the mortgages and had them recorded they entered upon a struggle for possession with the mortgagee having the prior claim. They acted in bad faith toward the Bank and ought not to gain any advantage thereby.

The conclusions of fact are favorable to the Bank, and we think that they are sufficiently supported by the evidence. The record does not show the amount realized by the receiver; but we feel satisfied that the funds in his hands will be insufficient to pay the three mortgage claims and that nothing will be left for the commercial creditors. If any balance should remain, however, they ought to have the benefit of it.

The judgment of the District Court will be affirmed.

All the Justices concurring.