## J. E. YOUNGBERG V. JAMES WALSH.

No. 14,299.    (83 Pac. 973.)

### SYLLABUS BY THE COURT.

1. CHATTEL MORTGAGES—*Failure to Record—Validity.* Under the provisions of section 4244 of the General Statutes of 1901 an unrecorded chattel mortgage or conveyance intended to operate as a mortgage of personal property, where there is no change in the possession of the property, is void as against the creditors of the mortgagor only while withheld from record, and whenever recorded will, from and after that time, be valid.

2. —— *Creditors—Interest in Mortgaged Property.* The creditors of the mortgagor mentioned in section 4244 of the General Statutes of 1901 include only those having some specific lien upon, or right to, the mortgaged property, and do not embrace mere general creditors.

3. —— *Priority—Other Security—Proceeds of Exempt Property.* The purchaser of personal property at a mortgagee's sale under a junior mortgage who buys with actual knowledge of the prior mortgage, which is recorded, and with notice that the seller obtained possession of the property from the prior mortgagee by deceit and afterward forcibly retained such possession, and who pays for the property only the amount secured by the junior mortgage, cannot, in a replevin action brought by the prior mortgagee to recover possession of the goods, avoid a recovery merely by showing that the plaintiff, in addition to his chattel mortgage, was secured by a mortgage on the homestead of the mortgagor, and that during the pendency of the replevin action the homestead had been sold, and the plaintiff might have enforced payment of his whole debt out of the proceeds of the homestead but did not do so, it appearing that the value of the personal property then materially exceeded the amount of both chattel mortgages thereon.

Error from Franklin district court; CHARLES A. SMART, judge. Opinion filed November 11, 1905. Affirmed.

STATEMENT.

THE district court, at the trial of this case, made the following findings of fact and conclusions of law:

"FINDINGS OF FACT.

"(1) On the 29th day of November, 1901, one J. B. Lockwood sold a stock of drugs, then located in Ottawa, to the defendant, J. E. Youngberg, and executed and delivered to him a bill of sale of that date, which bill of sale was recorded by Youngberg in the office of the register of deeds on February 10, 1902, the original paper remaining in the office of the register of deeds until June 11, 1902, at which time it was taken from the register's office by Youngberg, as hereinafter more fully described.

"(2) At the time of the execution of said bill of sale by Lockwood to Youngberg, Lockwood and wife executed and delivered to Youngberg a note for $1200, and a mortgage securing the same, upon this same stock of drugs, which mortgage was retained by Youngberg until June 11, 1902. It was never recorded. Just why this mortgage was given by Lockwood and wife upon the stock sold by Lockwood to Youngberg is not made clear by the evidence.

"(3) From November 29, 1901, until June 11, 1902, Lockwood continued to operate the store, sell the goods, and keep up the stock, as a clerk for Youngberg, receiving from Youngberg a salary of fifty dollars per month.

"(4) On June 11, 1902, the defendant, Youngberg, had closed the store and caused it to be locked, and J. B. Lockwood, desiring to continue the business, applied to the plaintiff, James Walsh, to furnish him the money with which to buy and operate the store, and to pay off the indebtedness due from Lockwood to other parties. Thereupon Walsh, the plaintiff, furnished to Lockwood $1005, $750 of which was paid by Walsh direct to Youngberg, the defendant, and then Youngberg executed and delivered to Walsh a bill of sale of that date, conveying to him the stock of drugs and store fixtures. This bill of sale was signed not only by Youngberg, but was also signed by J. B. Lockwood (this latter fact, however, was unknown to Youngberg), and was recorded in the office of the register of deeds by Walsh on November 2, 1903. At the same time Lockwood and wife executed to Walsh a real-

estate mortgage upon their homestead in the city of Ottawa for $1005. At the time of the delivery of the bill of sale from Youngberg and Lockwood to Walsh for the stock of drugs Youngberg also delivered to Walsh the chattel mortgage under date of November 29, 1901, executed by Lockwood and wife to Youngberg, which at that time had never been recorded. Before delivering the said chattel mortgage, however, Youngberg caused three lines to be drawn lengthwise of said chattel mortgage across its face, with ink, intending thereby to obliterate and cancel the said mortgage. At the time of the delivery of said mortgage Youngberg caused to be written upon the back thereof as follows: 'J. E. Youngberg, without recourse, James Walsh.' He declined to sign a formal assignment which was presented to him by Walsh for his signature. At the same time he took from the office of the register of deeds the bill of sale from Lockwood to him, caused the same to be marked 'released,' and delivered it to Walsh.

"(5) At the time of the payment of the $750 by Walsh to Youngberg, and the execution of the bill of sale by Youngberg and Lockwood to Walsh, it was the intention of both Lockwood and Walsh that Walsh was buying the stock of goods for Lockwood, and that Walsh should have security upon both the homestead and the stock of goods for the repayment of the $1005 above mentioned; and it was the belief of both, and they understood, that if Youngberg would deliver to Walsh the chattel mortgage made by Lockwood and wife to Youngberg under date of November 29, 1901, and the bill of sale from Lockwood to Youngberg, of the same date, that Walsh would hold the said chattel mortgage and bill of sale as a security against the stock of goods for the repayment of the $1005.

"(6) From the 11th day of June, 1902, until on or about January 1, 1904, Lockwood continued to operate the store in the usual and ordinary way.

"(7) On November 21, 1903, Lockwood, being indebted to one B. Herron in the sum of $144.42 for rent accruing during the seven months next prior to said date, executed, together with his wife, a promissory note for that sum, due January 1, 1904, and secured the same by a chattel mortgage upon the same stock of goods, fixtures, and furniture, and delivered the same to A. S. Phillips, an agent of said Herron,

which was duly recorded on November 24, 1903. At the time of the execution and delivery of said chattel mortgage to Phillips for Herron, said Phillips was advised by Lockwood that the plaintiff, Walsh, had a lien upon the stock. Phillips also had seen the bill of sale from Youngberg and Lockwood to Walsh in the records of the register of deeds' office before he took his mortgage.

"(8) Some time between November 21, 1903, and January 1, 1904, and after the Herron mortgage had been duly recorded, Lockwood surrendered the possession of said stock to the plaintiff, Walsh, and put him in possession of the same by delivering to him the keys of the store for that purpose. A little later, and while Walsh was in the possession of the stock, Phillips, as agent of Herron, or as assignee of said mortgage (the evidence does not show just when the Herron mortgage was assigned to Phillips), applied to Walsh for an opportunity to go into the store and inspect the stock. Walsh went with Phillips to the store, unlocked the door, and both went in. Phillips also had a key which he had obtained from the party with whom Walsh had left it. After examining the stock Phillips declined to leave the store, but declared that he was in possession of the stock under his chattel mortgage. Walsh left him in the store and went out to seek advice. Mr. Walsh is a very old man, and feeble in body. Some negotiations were had between Walsh and Phillips with reference to the joint possession of the stock, and later Phillips put a new lock upon the door, locked it up, and retained possession of the goods. He never was in possession of the stock with the consent of Walsh nor Lockwood, but his possession as against both was wrongful, and was obtained in the manner above indicated.

"(9) About ten days or more prior to January 26, 1904, A. S. Phillips, as assignee of the Herron mortgage, posted notices that he would sell the said stock under his mortgage on the 26th of January, 1904, and on the 26th of January, 1904, said stock was offered for sale by said Phillips as assignee, by and through a regular auctioneer; and at that time H. A. Richards, acting as attorney for Lockwood, appeared in the store and gave public notice that Walsh had a lien upon the stock, and that any one who purchased must purchase the same subject to the rights of Mr.

Walsh. Youngberg was present and heard the notice given by Mr. Richards, after which he bid $180 for the stock, and it was sold to him, and a bill of sale of that date executed to him by said A. S. Phillips, assignee; and Youngberg has held possession of the stock ever since.

"(10) Before this action was commenced Walsh made due demand upon Youngberg for the return of the property, which demand was refused.

"(11) At the time said demand was made, and at the time this action was brought, the said stock of goods, furniture and fixtures described in plaintiff's petition, and in the affidavit for replevin, was of the value of $600.

"(12) When the sheriff took possession of this stock, furniture and fixtures under his writ of replevin, the defendant, Youngberg, executed a redelivery bond in the manner provided by law, and retained the stock of goods, furniture, and fixtures.

"(13) On July 20, 1904, Lockwood and wife sold their homestead above referred to for $2175. There was a mortgage for $975 on the same prior to the one held by Walsh for $1005, executed by Lockwood and wife to Walsh to secure him for money advanced to take up and pay off a first mortgage held by the Ottawa Loan and Savings Association. After the sale of said homestead Walsh released both mortgages on the homestead, and received from Lockwood $1500, Lockwood retaining the balance. Walsh then had a settlement with Lockwood, and it was found that Lockwood was still indebted to him in the sum of $275, on account of the transaction with reference to the drug stock referred to in these findings, and Walsh then agreed to look to his security on the drug stock for said sum of $275, and that amount is now due Walsh from Lockwood, with interest at six per cent. from July 20, 1904.

"(14) At all of the times above mentioned Lockwood was a married man, and the real estate above referred to, mortgaged by him to Walsh, was a homestead, and occupied by Lockwood and his family."

"CONCLUSIONS OF LAW.

"(1) At the time of the commencement of this action the plaintiff had a special ownership in the property described in the petition, and the value of such

special ownership was $275, with interest thereon at six per cent. from July 20, 1904.

"(2) The plaintiff is entitled to judgment against the defendant for the possession of the property described in the petition and in the order of delivery herein, or for $275, with interest thereon at six per cent. from July 20, 1904, if a delivery of said property cannot be had, and for costs."

*Deford & Deford,* for plaintiff in error.

*C. B. Mason,* and *H. A. Richards,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: In this case three propositions are presented. First, did the transaction of June 11, 1902, between Walsh, Lockwood and Youngberg convey any interest in the property to Walsh? So far as the bill of sale and mortgage of November 29, 1901, which were delivered to Walsh, are concerned, probably not; but the bill of sale from Youngberg to Walsh, having been delivered with the intention upon the part of all the parties interested that it should give to Walsh a lien upon the property therein described, must, as we think, be regarded as equivalent to a chattel mortgage. The fact that Youngberg's name appears as grantor is not important, since Lockwood agreed to this form of security by attaching his name thereto, and Walsh assented to it by his acceptance thereof. To hold otherwise would sacrifice the substance of the transaction for the sake of its mere form. We assume from the manner in which this question was discussed that it is not seriously insisted upon, and pass it without further comment.

The second claim is that this bill of sale, assuming it to be a mortgage, became void as against Youngberg because it was not forthwith deposited in the office of the register of deeds as provided by law. This claim arises upon the construction of section 4244 of the General Statutes of 1901, which reads:

15—72 KAN.

"Every mortgage or conveyance intended to operate as a mortgage of personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be forthwith deposited in the office of the register of deeds in the county where the property shall then be situated, or if the mortgagor be a resident of this state, then of the county of which he shall at the time be a resident."

The bill of sale to Walsh was executed June 11, 1902, but was not recorded until November 2, 1903. The Herron mortgage, under which Youngberg claims, was executed November 21, 1903, and was recorded three days thereafter. From this it appears that the bill of sale under which Walsh claims was on record when the Herron mortgage was taken. It has been decided by this court that under the section of the statute just quoted a mortgage, although invalid while withheld from record, becomes valid whenever recorded. In the case of *Cameron, Hull & Co. v. Marvin*, 26 Kan. 612, 626, Mr. Justice Valentine used the following language:

"Counsel for defendant in error seem to contend that where a chattel mortgage is not recorded immediately after it is executed, and the property is not immediately delivered to the mortgagees, it is absolutely void as to all creditors whose debts have been created subsequent to the execution of the mortgage and prior to its being recorded, and prior to the delivery of the property, without reference to any lien procured upon the property by virtue of an attachment, or an execution, or otherwise. That is, they claim that such a mortgage is so absolutely void as to general creditors, whose debts have been created after the execution of the mortgage and before the recording of the same, or before the delivery of the property, that they may obtain a lien upon the property after the mortgage is recorded and after the property is delivered, by virtue of an attachment or other legal process. . . . But

whether the doctrine claimed by counsel is sustained by any authority or not, we do not think it is sound."

This language has since been cited, approved and followed in *McVay v. English,* 30 Kan. 368; 1 Pac. 795; *Dry Goods Company v. McKee,* 51 Kan. 704, 33 Pac. 594; *Lead Pencil Co. v. Champion,* 57 Kan. 352, 46 Pac. 696. The rule has become settled in this court that an unrecorded mortgage, although void for some purposes, becomes valid whenever recorded, and of the same force and effect thereafter as a new mortgage then executed and recorded. (*Utley v. Fee,* 33 Kan. 683, 7 Pac. 555, and cases cited *supra.*) The failure of Walsh to place his bill of sale upon record was therefore immaterial, as to the Herron mortgage, for the reason that when the latter was taken the Walsh bill of sale was on record.

It may be further mentioned that Youngberg was not a creditor within the meaning of the statute under consideration. The protection given to creditors by this law was intended to include only those having some specific lien upon, or right to, the mortgaged property, and not mere general creditors. (*Cameron, Hull & Co. v. Marvin,* 26 Kan. 612; *Dry Goods Company v. McKee,* 51 Kan. 704; *Hausner v. Leebrick,* 51 Kan. 591, 33 Pac. 375.)

The only case cited by plaintiff in error directly supporting a contrary doctrine is the case of *Dempsey v. Pforzheimer,* 86 Mich. 652, 49 N. W. 465, 13 L. R. A. 388. That case does sustain his contention, and, were it not that this state has adopted another rule, it would be a strong authority. In the case of *Cameron, Hull & Co. v. Marvin,* 26 Kan. 612, Mr. Justice Valentine challenged the law as announced in Michigan and elsewhere, and since that time this court has followed the decisions that sustain the position hereinbefore stated, as shown by the case above cited.

Again, Herron, through his agent, Phillips, had actual notice of the Walsh mortgage and knew that it

was on record before the execution of the one under which Youngberg claims. Youngberg was a party to the transaction with Walsh, had full knowledge thereof, and was again duly notified at the time of the mortgage sale at which he purchased the goods. He is in no better position than Herron would be, and probably not so good. (*Gagnon v. Brown,* 47 Kan. 83, 27 Pac. 104.)

Finally it is urged that Youngberg is entitled to the equitable protection of this court because Walsh did not compel Lockwood to satisfy this lien upon the stock out of the proceeds of the sale of the homestead, when he might have done so. This claim for equitable protection is founded upon the idea that, as the debt of Walsh was secured by a mortgage upon the personal property in controversy, and also upon the homestead of Lockwood, and the debt of Herron was secured by a junior lien upon the personal property only, Walsh ought to have paid himself in full out of the proceeds of the homestead; and, not having done so, should for that reason have been denied a recovery in the replevin action. This is said to be a proper application of the general rule in equity that requires the holder of a mortgage upon several pieces of property, upon a part of which there is a junior mortgage, to protect the junior mortgagee by first exhausting that portion of the property not covered by both mortgages.

The case of *Bank v. Taylor,* 69 Kan. 28, 76 Pac. 425, is cited as an authority directly in point upon this proposition. In that case, however, the surplus in the hands of the senior mortgagee was not the proceeds of exempt property. Besides, the holder of that surplus expressly agreed with the junior mortgagee to satisfy his claim out of such surplus; but, in violation of this agreement, he failed so to do, and surrendered the surplus, whereby it passed beyond the reach of the junior mortgagee, who, except for his reliance upon such promise, might have secured his debt. The bad

Youngberg v. Walsh.

faith of the senior mortgagee in this respect was the real ground upon which that case was decided.

In this case the surplus was the proceeds of exempt property, and Lockwood, the owner, not being a party, the question of exemption could not be conclusively determined. No application was made by the junior mortgagee to Walsh to use the surplus in the way now suggested, and Walsh at no time agreed so to do. At the time of the settlement of Walsh with Lockwood this action was pending in the district court, and the personal property in controversy at that time was worth $600, while the aggregate of both liens thereon was only $455. The practical effect of the action here invoked as ordinary equity would have compelled Lockwood to surrender to Walsh and Youngberg property and cash amounting to $875 to satisfy an indebtedness of $455, the only reason therefor being to enable Youngberg to retain and enjoy the unconscionable bargain that he had obtained as the result of the fraud and force of Phillips.

It will be seen, therefore, that these cases are wholly dissimilar. The case cited was intended to prevent one person from acting in bad faith, and in violation of his agreement, to the detriment of another; while the rule, if applied in this case, would enable one person not only to act in bad faith with another, but would sanction his wrongful and illegal conduct. This would be highly inequitable.

The judgment of the district court is affirmed.

All the Justices concurring.