[Civil No. 2149. Filed April 10, 1924.]

[224 Pac. 818.]

WM. H. MOORE, JR., Trustee in Bankruptcy of the Estate of JACK BARBER, Bankrupt; ANDREW BAUMERT, JR., as Receiver of the Bank of Phoenix, Appellants, v. J. B. CHILSON, N. W. CHILSON and J. C. CHILSON, Appellees.

1. APPEAL AND ERROR—COURT'S FINDING OF FACT SUPPORTED BY EVIDENCE NOT DISTURBED.—The trial court's findings, supported by evidence in the record, that a chattel mortgage was filed for rec-

---

1.  See 2 R. C. L. 202.

ord in due time in the county wherein the property was located will not be disturbed.

2. CHATTEL MORTGAGES — MORTGAGE BINDING ON MORTGAGOR THOUGH NOT FILED FOR RECORD.—Mere execution and delivery of a mortgage is sufficient to invest mortgagee with all the rights which the instrument purports to convey as between the parties to the contract, and mortgagor's obligation under the mortgage is not relaxed, when he contracts debts which he cannot pay without recourse to the property mortgaged, merely because the latter has not been filed for record.

3. CHATTEL MORTGAGES—PRIOR LIEN AS AGAINST CREDITORS ACQUIRING NO SPECIFIC INTEREST IN OR LIEN ON CHATTELS BEFORE BELATED RECORDATION. — A mortgage not recorded forthwith in the county wherein mortgagor resides, as required by Civ. Code 1913, paragraph 4126, is a prior lien as against creditors who acquired no specific interest in or lien on the chattels before the mortgage was finally filed for record, though they became creditors before such time, the filing of the mortgage for record being the legal equivalent of taking possession of the thing mortgaged.

4. STATUTES — JUDICIAL CONSTRUCTION PART OF SUBSEQUENT ACTS USING IDENTICAL LANGUAGE. — Judicial construction of a statute becomes a part of subsequent acts using identical language relating to the same subject matter.

5. STATUTES—ACT ADOPTED FROM FOREIGN STATE INTERPRETED IN ACCORDANCE WITH PRIOR CONSTRUCTION BY COURTS THEREOF.—Civ. Code 1913, paragraph 4126, declaring chattel mortgages not accompanied by immediate delivery of the mortgaged property void as against mortgagor's creditors and subsequent purchasers and mortgagees in good faith, unless filed for record in the counties wherein the property was situated and mortgagor resided, having been adopted from Texas after the courts of that state had interpreted it, such interpretation should be followed, unless at variance with sound reason, rights of property being affected.

APPEAL from a judgment of the Superior Court of the County of Gila. W. R. Chambers, Judge. Affirmed.

2.  See 5 R. C. L. 414.
3.  See 5 R. C. L. 414.
4.  See 25 R. C. L. 956.
5.  See 25 R. C. L. 1069.
    See 4 C. J. 877; 11 C. J. 511, 533; 36 Cyc. 1153, 1154.

Mr. George J. Stoneman, Messrs. McCarthy, Nolan & Freston, and Mr. Paul Sampsell, and Messrs. Morris & Malott, for Appellant Moore.

Mr. Will E. Ryan and Mr. J. Early Craig, for Appellant Baumert, Jr.

Mr. Chas. Woolf, and Messrs. Armstrong, Lewis & Kramer, for Appellees.

LYMAN, J.—This action is by Chilsons to foreclose a chattel mortgage given by Barber to secure the purchase price of cattle with range and equipment. Judgment was for the plaintiff. The appellants, trustee in bankruptcy of Barber, a voluntary bankrupt, and receiver of the Bank of Phoenix, both represent unsecured creditors of Barber, and contest the mortgage, because not filed for record in the county of Barber's residence before their debts were contracted. The trial court found as a fact that the mortgage had been in due time filed for record in Gila county, where the property was located. This finding is one ground of appeal, but there is not lacking in the record evidence upon which the court might reasonably have arrived at that conclusion, and it will not be disturbed. *Mull* v. *Dooley,* 89 Iowa, 312, 56 N. W. 513.

But the mortgage was not "forthwith" filed for record in Maricopa county, Barber's place of residence, but was withheld from such record for a number of months, during which time the debts represented by the appellants were contracted; but it was finally on November 16, 1921, and before Barber was adjudged a bankrupt, or the defendant receiver was appointed, or any interest or lien had intervened affecting the property in question, filed for record in that county. Under these circumstances which claim should be first satisfied out of the mortgaged prop-

erty, the debts secured by the mortgage lien, or the debts represented by trustee and receiver? The abstract question is, Does a chattel mortgage, not recorded forthwith in the county where the mortgagor resided, constitute any prior lien as against creditors who became such prior to the time when such mortgage was finally filed, but who had acquired no specific interest in or lien upon the mortgaged property prior to the date of such filing?

The whole transaction is regulated by statute, and the rights of the contending parties depend upon the terms of the statute. The question raised involves a construction of that statute.

"Every chattel mortgage, deed of trust or other instrument of writing intended to operate as a mortgage of, or lien upon, personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the property mortgaged or pledged by such instrument, shall be absolutely void as against the creditors of the mortgagor or person making the same, and as against subsequent purchasers and mortgagees or lienholders in good faith, unless such instrument or a true copy thereof shall be forthwith deposited with and filed in the office of the county recorder of the county where the property shall then be situated, and if the mortgagor or person making the same be a resident of this state, then it shall also be recorded in the county of which he shall at the time be a resident." Revised Statutes of Arizona, par. 4126.

. This statute contemplates two classes of persons both claiming, each upon a different basis, the first payment of their demands out of the same fund, and undertakes to fix and define the rights of each, the mortgagee on the one side and the creditors on the other. As between the parties to the contract, the mere execution and delivery of the mortgage is sufficient to invest the mortgagee with all the rights

which that instrument purports to convey. When the mortgagor contracts debts, which he cannot pay without recourse to the property which he has already covered by mortgage, his legal obligation under the mortgage is not relaxed merely because the mortgage has not been filed for record. This provision, and the consequences which inevitably flow from it, must be given effect in construing the statute as applied to the rights of the other class, the creditors. As to them it is said the mortgage is absolutely void unless promptly filed for record, or unless there is an immediate change of possession of the property; that is, unless with the delivery of the mortgage to the mortgagee, the mortgagor shall also deliver to him the chattels mortgaged, or, in lieu of that, file for record forthwith the instrument of conveyance, so that by the one means or the other the public or that part of the public which transacts business with the mortgagor, may have a means of knowing who owns the property, and what right or interest the mortgagor may have in it. The device of filing papers for record, and making such filing constructive notice to all concerned, is of comparatively recent origin. Formerly the only means known or employed for giving notice to third persons of ownership in chattels was by actual possession. The substitution for such possession of a filing for record is in fact and in law equivalent. *Ruggles* v. *Cannedy,* 127 Cal. 290, 46 L. R. A. 371, 53 Pac. 911, 59 Pac. 827.

The statute by its express terms treats the two as of equal import and effect. Since the passage of recording statutes, following the rule which the courts had established before that time, that a lien which was void because it was secret on account of the failure to deliver possession of the property involved, became valid and established as soon as there was a transfer of possession, as against all persons who had not in the meantime acquired some specific interest in or

lien upon the property. Jones on Chattel Mortgages (5th ed.), 178. While the change of possession of the chattels is actual notice to all the world, the filing for record is by law made equally effective as constructive notice, and there would appear to be no sound reason why a deferred filing of the chattel mortgage should not have the same force and effect as the deferred transfer of actual possession of the chattels mortgaged.

So long as the mortgage remains unsatisfied, whether it be filed for record or not, however many creditors there may be, and however great the indebtedness, the mortgagor may surrender the mortgaged chattels in satisfaction of the mortgage as against all creditors who have acquired no lien or interest in the mortgaged chattels. Upon this proposition all authorities are in accord. If the mortgagor has defaulted in payment of the debt secured by his mortgage, he is required by his contract to surrender and deliver to the mortgagee the chattels included in the lien. The mortgagor may do this voluntarily in compliance with his contract, or the mortgagee may take the chattels forcibly in pursuance of the same contract. In either case the source of authority is the mortgage contract. The mortgagor gives only what he is bound to do by the terms of the mortgage. The mortgagee takes only what the same contract authorizes him to take. By whichever means the transfer of possession is effected the legal significance of the act is the same, because in consummation of the contract which the statute under consideration declares, as between these two parties, is at all times valid without filing, the one is the legal equivalent of the other, and the effect upon the creditors is the same. It therefore follows that such transfer is not void as to creditors who have not, up to the moment of such transfer, obtained an interest in or lien upon the specific chattels involved, whether

the mortgage is filed for record or not. Most authorities concur in this proposition, and it may be stated as the general rule.

The courts of New York, however, hold that the mortgagor may voluntarily surrender chattels in payment of his mortgage, and to the exclusion of the general creditors who have not in the meantime acquired a lien, but that the mortgagee may not take the chattels in payment of his unfiled mortgage in preference to the rights of unsecured creditors, provided, however, such creditors at some time or other in the future, whether before or after the property has been sold to satisfy the mortgage, establish their claim by judgment, and proceed against the property by execution or action of conversion.

In *Stephens* v. *Perrine,* 143 N. Y. 476, 39 N. E. 11, the court said of the mortgagor under such conditions that he may sell or assign and transfer it (meaning mortgaged property), and give an absolute title, or he may deliver the property to the mortgagee in payment of his debt.

In *Karst* v. *Gane,* 136 N. Y. 316, 32 N. E. 1073, the court upon the same question says:

"The simple contract creditor runs the risk of having his remedy to assail the mortgage defeated by a *bona fide* transfer of the property by the mortgagor to the mortgagee in payment of the mortgage, before he has obtained judgment and execution, or any lien on the property. *Kitchen* v. *Lowery,* 127 N. Y. 59, 27 N. E. 357."

These are two of the cases which appellants urge confidently as authority for this appeal. But few courts make the distinction made by these cases, between the effect of voluntary surrender of the property by the mortgagor in payment of the debt, and the taking without his consent by the mortgagee of possession of the property under the terms of his mortgage, which this statute has declared to be, as

between the two, valid at all times, and the continuing obligation of the mortgagor which he is estopped to contradict or repudiate. It appears to be the inevitable effect of this statute that the recovery of possession by the mortgagee in accordance with the mortgage would be quite as much the present act of the mortgagor, and invested with like consequence and effect, as though by some new and voluntary act, and such is the view taken by most courts, including California, one of the states relied upon by appellants.

The rule is thus stated in Jones on Chattel Mortgages (paragraph 178, 5th ed.):

"If a mortgagee takes possession of the mortgaged chattels before any other right or lien attaches, his title under the mortgage is good against everybody, if it was previously valid between the parties."

This seems to be the general rule, to which there are exceptions in New York, New Jersey and Michigan, and a few other states.

In this case, the appellees claim to have taken possession of the chattels in controversy "before any other right or liens had attached." The evidence bearing upon this fact is not conclusive nor satisfactory, and the judgment of the trial court seems to have been based upon the fact, which is undisputed, that the mortgage had been fully and duly filed for record before any other right or lien had attached to the mortgaged property, and not because the property had passed into the hands or possession of the mortgagee. We have therefore to consider the effect upon the rights of unsecured creditors of such filing, though long delayed and subsequent to the time when the debts of the claimants had been contracted. Jones on Mortgages (paragraph 236, 5th ed.), states the rule upon that point as follows:

"The recording or filing of a mortgage is generally equivalent to a change of possession under the statutes providing for such recording or filing."

The express purpose of the statute was to provide notice to the public by means of filing the chattel mortgage for record, in lieu of change of possession, which had been required under the common law; nor is there any sound reason why the one should not be the equivalent of the other. If it is equivalent at one time, there is no reason why it should not be equivalent at another.

"Of course, it becomes valid as against creditors, and subsequent purchasers and mortgagees, only as of the date of depositing the same, and does not relate back so as to invalidate interests or rights already obtained by other persons in or to the mortgaged property; and we cannot think that the fact that the debt secured by the mortgage was past due at the time when the mortgage was deposited with the register of deeds, can make any difference with reference to the validity of the mortgage; nor can we think that the fact that the mortgagor had not at the time of the depositing of the mortgage in the register's office given his express consent that the mortgage should be so deposited, can make any difference. It must be presumed, in the absence of anything to the contrary, that the mortgagor was at all times willing and consenting that the mortgage should be deposited in the office of the register of deeds for the purpose of making it valid. He executed it for that purpose, and probably the law would not, at any time after the execution of the same, allow him to dissent, so as to render the mortgage void, or so as to prevent it from being completely and absolutely valid for all purposes, after its deposition with the register of deeds." *Cameron* v. *Marvin,* 26 Kan. 612.

The purpose of the recording is to give notice. So far as mere notice is concerned, the recording is as effective at one time as it is at another, and legally is equivalent to a change of possession. This proposition is so plain that it finds no dissent. In *Ruggles* v. *Cannedy,* above referred to, the opinion states:

"Recordation itself is the substitute for delivery."

The New York cases above cited also concur in this proposition. In *Karst* v. *Gane* we read:

"The filing stands as a substitute for immediate delivery and an actual· and continued change of pos-·session of the property."

The statute by express terms makes one the equivalent of the other. If change of possession of the mortgaged chattels supersedes the claims of all creditors whose rights or liens to the specific chattels have· not yet attached, then the filing for record of the mortgage has like effect. If change of possession of the mortgaged chattels by will of the mortgagor in payment of the mortgage is conclusive against all rights not already attached, then change of possession of the same chattels by virtue of the terms of the mortgage, which is good between the mortgagor and the mortgagee, and through which the mortgagor continues to speak his will, is equally good.

We conclude, therefore, since the voluntary surrender by the mortgagor of the mortgaged chattels has the effect at any time to supersede the rights of any creditor who has not already acquired some lien or interest in the chattels, that our statute contemplates that the mortgagee may take possession, in accordance with the terms of the mortgage, of the mortgaged chattels, and that the filing of the mortgage for record is the legal equivalent of taking possession of the thing mortgaged, and has the same effect upon the rights of all creditors who have acquired no lien or interest in the property mortgaged.

It is generally assumed, and upon apparently good grounds, that the present statute of this state which regulates the filing for record of chattel mortgages, adopted in 1887, was taken from the state of Texas, where it had been a law since 1879. In any event, there is no distinguishable difference in the phraseology or legal effect of the two statutes, and the construction which the courts of Texas have given to this

law is enlightening, if not controlling, in this juris-diction.

The Texas statute of 1879 was an amendment of an act which had been in force since 1840, and which had been construed in *Grace* v. *Wade,* 45 Tex. 527, which held that the term "creditors," as there used, applied to only such as had acquired some character of lien upon the property involved. By the law of 1840 the unrecorded chattel mortgage was void as to such creditors only as were without notice of the mortgage. The law of 1879 makes the unrecorded mortgage void as to all creditors, regardless of notice. Otherwise the term "creditors" is unaffected by the amendment. The interpretation given to the old law that it applied only to such as had acquired "some character of lien" upon the property is equally applicable to the later statute, and therefore survives the amendment and becomes a part of it. Judicial construction of statutes becomes a part of subsequent legislative enactments using identical language relating to the same subject matter. *Keller* v. *Smalley,* 63 Tex. 512 (1885), assumed, though that question was not directly involved, that the law of 1879 used the term "creditors" to mean such as had acquired some interest in or lien upon the property prior to the filing of the mortgage.

In 1887, but subsequent to the enactment in this state of the statute under consideration, in *Overstreet* v. *Manning,* 67 Tex. 657, 4 S. W. 248, the court at some length rehearses the history of legislation upon this subject in that state as follows:

"It has been heretofore held by this court that a chattel mortgage, not filed for record as required by law, is void as to a creditor, though he may have had notice of the instrument. *Brothers* v. *Mundell,* 60 Tex. 240. It was not expressly held in that case that the creditor must have acquired some right in the mortgaged property by attachment, execution, or otherwise; for the creditors whose rights were pro-

tected by the decision had levied an attachment upon the property, and there was no question made upon this point. In the case of *Grace* v. *Wade,* 45 Tex. 527, it was held under the act of February 5, 1840, which protected creditors and subsequent purchasers without notice against prior unrecorded mortgages and conveyances of property, that by the word 'creditors' was meant creditors who had acquired some character of lien upon the property. This is still the recognized law of our state. While our statute as to chattel mortgages differs from the act of 1840 in that it avoids these instruments as against creditors whether with or without notice, it makes no change as to the nature of the debt to be thus protected. The language of the two statutes being in this respect identical, and the act in reference to chattel mortgages having been passed after the decision in *Grace* v. *Wade, supra,* was made, and the subject-matter to which it was applied being similar to that of the act of 1840, we must conclude that the word 'creditors,' so far as the character of indebtedness held by them is concerned, was intended to have the same meaning as it had received in construing the former act.''

The law of 1879 was transplanted to this jurisdiction with its language construed by the courts of Texas. Arizona took it as Texas had made it. Arizona having adopted this legislation from Texas after the courts of that state had interpreted and defined its meaning, that interpretation should be followed here, unless it is at variance with sound reason. The construction already placed upon this statute affects the rights of property, and therefore is not to be lightly changed or substituted for some other rule. The construction of this statute adopted by Texas seems to accord with sound reason.

Our construction of this statute is supported by the authority of *Cameron, Hull & Co.* v. *Marvin,* 26 Kan. 612; *McVay* v. *English,* 30 Kan. 368, 1 Pac. 795; *Wilson* v. *Leslie,* 20 Ohio, 161; *American Lead Pencil Co.* v. *Champion,* 57 Kan. 352, 46 Pac. 696; *Youngberg* v. *Walsh,* 72 Kan. 220, 83 Pac. 972; *Pacific Coast*

*Biscuit Co.* v. *Oswald,* 77 Wash. 352, 137 Pac. 483; *Forrester* v. *Kearney Nat. Bank,* 49 Neb. 655, 68 N. W. 1059.

In the present instance, the appellees having filed for record their mortgage in the county of the mortgagor's residence, as well as in the county where the property was located, before the appellants, or those whom appellants represent, had acquired any lien upon or interest in the mortgaged chattels, the lien of the mortgage is superior and prior to the claims of such creditors.

The judgment will be affirmed.

McALISTER, C. J., and ROSS, J., concur.