In the Matter of **SPANISH LANGUAGE TELEVISION OF ARIZONA, INC.,** Debtor.

**RCA CORPORATION, Creditor-Appellant,**

v.

**Julius ALTSCHUL, Trustee-Appellee (two cases).**

Nos. 26195, 26243.

United States Court of Appeals, Ninth Circuit.

Feb. 24, 1972.

Rehearing Denied March 22, 1972.

Frank C. Brophy, Jr. (argued), of Ryley, Carlock & Ralston, Phoenix, Ariz., for appellant.

Robert G. Mooreman (argued), Phoenix, Ariz., for appellee.

Before KOELSCH, ELY, and WRIGHT, Circuit Judges.

ELY, Circuit Judge:

Here, we have consolidated appeals taken by a secured creditor (RCA Corporation, hereinafter RCA) from certain Orders made in proceedings under Chapter X of the Bankruptcy Act (11 U.S.C. §§ 501–676). The debtor corporation seeking to reorganize (hereinafter TV or Debtor) is engaged in televising activity, telecasting as KPAZ-TV, Channel 21, Phoenix, Arizona.

On August 6, 1969, TV filed a Petition for Reorganization pursuant to 11 U.S.C. § 526. The Petition, which included allegations that TV's assets "on a going concern" basis exceeded its liabilities and that reorganization was necessary to realize the full value of those assets, was immediately granted by the District Court and a Trustee was appointed to guide the reorganization. That Trustee was subsequently replaced by Altschul.

While Altschul was attempting to formulate a viable plan for reorganizing TV, he continued its operations. He found, however, that the operating expenses, consistently exceeded income. This deficit was met by the court-approved issuance, in two installments, of $30,000 of high priority Certificates of Indebtedness under 11 U.S.C. § 516(2).

RCA is one of TV's major creditors. Under a recorded conditional sales contract it sold valuable telecasting equipment to TV in 1967. Since its claim for the balance still owing on that contract, $367,000, would be subordinated to claims based on the Certificates, RCA protested their issuance. Ultimately, it appealed the District Court's order which authorized the last installment of the Certificates. In bringing that appeal to this court, RCA contended that not only was the issuance of the Certifi-

cates not in compliance with § 516,[1] but also that the telecasting equipment sold under the RCA/TV contract was, under Arizona law, the property of RCA and thus was not subject to the jurisdiction of the reorganization court.

At the same time it was contesting the validity of the Certificates, RCA was challenging the other reorganization efforts. During the period of reorganization—August 1969 through July 1970—RCA attempted to reclaim its equipment on several occasions. It urged the court to order TV into straight bankruptcy because the Trustee had no feasible Chapter X plan, repeatedly suggested that the court had undervalued RCA's security, disputed the propriety of the Trustee's procedures for evaluating and accepting reorganization plans, and objected to the joint plan of reorganization recommended to the Referee. In sum, RCA challenged almost every aspect of the proceeding. It did so in vain, and the Referee approved the joint reorganization/liquidation scheme advanced by the Trustee and the Glad Tidings Church of America, Inc. The District Court then approved the Referee's findings and confirmed the proposed joint plan. Shortly thereafter, RCA brought its second appeal, challenging the approved plan in many of its aspects.

Although RCA makes many contentions, we have concluded that we need discuss only one. This is the contention that the District Court erred in subjecting the telecasting equipment covered by the conditional sales contract to the reorganization and to the Certificates.[2] Believing that this contention is valid, we reverse.

■ The basic premise of RCA's argument is that property sold under a security agreement, such as that here involved, permitting a vendor to retain title to goods delivered into the possession of a buyer, is not to be included among the buyer's assets if he becomes bankrupt. Although such a contention is not supportable if an agreement is governed by the Uniform Commercial Code,[3] it finds support in the provisions of the Uniform Conditional Sales Act (U.C.S. A.) which was in effect in Arizona when the contract between RCA and TV was made.[4]

■ The U.C.S.A. (Ariz.Rev.Stat. 44–301 et seq., repealed 1968) explicitly recognized conditional sales agreements under which a vendor retains title. Section 44–301 provided that "any contract for the sale of goods under which possession is delivered to the buyer and the property [i. e., the title] in the goods is to vest in the buyer at a subsequent time upon the payment of part or all of

---

1. Section 516 provides:
    "Upon the approval of a petition, the judge may . . . —

    (2) authorize a . . . trustee . . ., upon cause shown, to issue certificates of indebtedness . . . upon such terms and conditions and with such security and priority in payment over existing obligations, secured or unsecured, as in the particular case may be equitable."

2. If the equipment were improperly subject to the reorganization because it was not the property of TV, then, *a fortiori*, it could not be subjected to the lien created by the Certificates.

3. The Uniform Commercial Code expressly denies the importance of the purported location of "title" in determining contrac-

tual rights (§ 9–902); hence, property sold under agreements governed by the Code are subject to the jurisdiction of District Courts in bankruptcy actions. *See* In Re Yale Express System, Inc., 370 F.2d 433, 436–437 (2d Cir. 1966).

4. The Code was adopted by the Arizona Legislature in 1967, but it was effective only after January 1, 1968. Agreements entered prior to the effective date are still governed by the U.C.S.A.:
    "Transactions validly entered into before [January 1, 1968] and the rights, duties and interests flowing from them remain valid thereafter and may be . . . enforced as . . . permitted by any statute or other law . . . repealed by the law by which this chapter was enacted as though such repeal . . . had not occurred." (44–3201 Ariz.Rev.Stat.)

the price . . . [is a conditional sale]." The effect of such a sale is that "every provision in a conditional sale reserving property [i. e., title] in the seller after possession of the goods is delivered to the buyer, shall be valid as to all persons . . ."[5] The security agreement in this case was a conditional sale. Its terms are closely modeled after the provisions of the U.C.S.A., and TV controverted neither RCA's characterization of the transaction nor its contention that the parties intended such an agreement. Under Arizona law, then, the telecasting equipment was RCA's property and so remained.

The foregoing conclusion does not, however, necessarily determine whether the equipment was beyond the jurisdiction and control of the District Court. The court has jurisdiction over the property of debtors in bankruptcy, and the definition of "property" is ordinarily determined by reference to the purposes of the Bankruptcy Act, not state law. Segal v. Rochelle, 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed. 428 (1966); Arnold v. Phillips, 117 F.2d 497, 500–501 (5th Cir.), cert. denied 313 U.S. 583, 61 S.Ct. 1102, 85 L.Ed. 1539 (1941). Since the purposes of the Bankruptcy Act are different from those of the U.C.S.A. important recognition must be given to interests which the state may not have deemed relevant in its allocation of title. See In re Lakes Laundry, 79 F.2d 326, 328 (2d Cir. 1935) (L. Hand, dissenting); 34 Mich. L.Rev. 579 (1936). The inquiry begins with state law, for the issue is whether there is sufficient reason to justify federal court deviation from state policy. The Supreme Court has said that "the federal courts in bankruptcy will follow the state [law of property]; but when the language of Congress indicates a

policy requiring a . . . construction [of state law different than that] the state . . . would give it, federal courts cannot be concluded by [the state interpretation]." Board of Trade v. Johnson, 264 U.S. 1, 10, 44 S.Ct. 232, 234, 68 L.Ed. 533 (1923). Here, we think that the District Court should have found Arizona's law to be controlling; there is no clear evidence that any Congressional purpose requires overriding that law.

We find much support for our position in *In re Lakes Laundry, supra,* wherein the Second Circuit decided a case very similar to the one at hand. There, a creditor-vendor, claiming under a U.C.S.A. conditional sales agreement, protested inclusion of "his" property in a reorganization plan approved for his debtor-buyer. The court held that conditional sales contracts do not vest debtors with property interests sufficient to justify assertion of bankruptcy jurisdiction. Analyzing the provisions of the Bankruptcy Act, the court concluded that the Act should be interpreted in a manner consistent with the historically recognized "distinction between property mortgaged by a debtor (which is subject to jurisdiction, see 6A Collier on Bankruptcy ¶ 70.04 (14th ed. 1969) ) and property held by a debtor as a conditional vendee." 79 F.2d at 328. As a result, the property covered by the security agreement was deemed not to be the property of the debtor. While *Lakes Laundry* was decided before the Bankruptcy Act underwent major revisions in 1938, the Second Circuit has subsequently held that the rule of that case, with one minor modification, has survived virtually intact. Barth Equipment Co. v. Perlstein, 128 F.2d 253 (2d Cir. 1942).

Despite the similarity between our case and *Lakes Laundry,* we do not rest

---

5. There is an exception to the general rule of validity made for unfiled agreements, but since RCA recorded the instrument, the exception is not relevant in this case. See Ariz.Rev.Stat. § 44–205; Castaneda v. National Cash Register Co.,

43 Ariz. 119, 29 P.2d 730 (1934). *See also* Glessner v. Massey Ferguson, Inc., 353 F.2d 986 (9th Cir.), cert. denied, 384 U.S. 970, 86 S.Ct. 1859, 16 L.Ed.2d 681 (1965).

our analysis solely upon the opinion in that case. This is because the Second Circuit has itself recently questioned its *Lakes* decision. *See* In re Yale Express System, Inc., 370 F.2d 433 (2 Cir., 1966).[6]

Our own case of Glessner v. Massey Ferguson, Inc., 353 F.2d 986 (9th Cir.), cert. denied 384 U.S. 970, 86 S.Ct. 1859, 16 L.Ed.2d 681 (1965), warrants emphasis. There, we examined the effect of bankruptcy proceedings upon a repossession under a conditional sales contract governed by the U.C.S.A. Massey-Ferguson sold equipment to the bankrupt, one of its dealers. Subsequently, two months prior to bankruptcy, but after the buyer's default, Massey-Ferguson repossessed the equipment "under a claim of ownership" based on the unrecorded sale contract. Interpreting Arizona authority and the Bankruptcy Act, we held that a *seller's failure to record such a contract* "made the later repossession . . . a transfer of the debtor's interest in such property, 'for or on account of an antecedent debt' . . . [which] depleted the bankrupt's estate." 353 F.2d at 992.[7]

Under the U.C.S.A., a contractual provision reserving title in a seller is void, as to any "purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them," unless the agreement is properly recorded. Ariz.Rev.Stat. § 44–305. This is true, however, only if the property is in the possession of the buyer, for, as to title, repossession is the equivalent of recording. Both acts have *the same effect on the buyer and his transferees and lienors.* 353 F.2d at 989. *See also* Moore v. Chilson, 26 Ariz. 244, 224 P. 818 (1924). Thus, the effect on title to property sold under a conditional sales contract which was determined in *Glessner*, to result from a conditional vendor's repossession also follows, in the present case, from the vendor's prior recordation of its contract. By properly recording the agreement, RCA prevented TV, in the context of this case and for the purposes of the Bankruptcy Act, from successfully asserting any property interest in the telecasting equipment.

The effect on bankruptcy proceedings of such a transfer under a conditional sales contract was long ago determined by the Supreme Court. In Bailey v. Baker Ice Machine Co., 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275 (1915), the Court affirmed the Court of Appeals decree which permitted the creditor-vendor to regain possession of property sold to the bankrupt under a conditional sales contract. The Court thus looked to state law for guidance as to the disposition of the property sought by the creditor. We think state law is still determinative. Although Congress has overruled some aspects of the *Bailey* decision, we find nothing in the history of the Act to indicate that such portion of the decision as is relevant to this appeal has been affected. We hold, therefore, that the status of the secured interest in this case, under the Act, should be determined by application of state law. Thus, the telecasting equipment should have been reclaimable by RCA.

The right to reclaim is not absolute. As the Second Circuit held in Barth Equipment Co. v. Perlstein, *supra*, wherein *Lakes Laundry* was modified, a petition to reclaim upon proof of valid title is subject to various equitable limitations, including a reasonable delay in restoring possession. 128 F.2d at 254.

---

6. The contract considered by the court in *Yale Express* was governed by the Uniform Commercial Code, not the U.C.S.A. Although some doubt was expressed as to whether *Lakes* was ever correct, the thrust of the opinion went to whether the Code required results different than those of the U.S.C.A.

7. The court went on to hold that since repossession occurred within four months of the bankrupt's filing of his petition for bankruptcy and Massey-Ferguson was aware of the debtor's insolvency at the time of foreclosure repossession constituted a voidable preference under 11 U.S.C. § 96.

In our case, TV has certainly retained possession of RCA's property for a reasonable time; indeed, the delay—now exceeding two years—has been more than ample. Upon remand, therefore, RCA's petition will immediately be granted by the District Court and the property released to RCA free of any liens asserted under the Certificates of Indebtedness.[8]

Reversed and remanded.

8. RCA also raised numerous significant and, as we view the record of the proceedings below, probably meritorious objections to specific aspects of the reorganization plan confirmed by the District Court. Since it was the only creditor to prosecute an appeal, and its interests are fully vindicated by our decision on the issue discussed, we do not reach those other points. Since TV likely cannot operate without RCA's equipment, future proceedings in the District Court will deal with the disposition of a markedly different estate and our comments on the current plan would, therefore, serve no useful purpose.