[No. 12297.   Department One.   April 12, 1915.]

UNIVERSITY STATE BANK, *Respondent*, v. H. W. STEEVES, *Appellant*.[1]

CHATTEL MORTGAGES—RECORD—NOTICE. A chattel mortgage of record in the proper registration office, and unsatisfied of record, is constructive notice to those subsequently becoming interested in the property, that the debt secured thereby has not been wholly paid.

SUBROGATION—RIGHT OF MORTGAGOR—PAYING DEBT AFTER SALE OF PROPERTY. Where a mortgagor of personalty, having transferred the property subject to the mortgage, was subsequently compelled to pay the mortgage indebtedness, and took an assignment of the note and mortgage, the debt was not thereby discharged, but he was entitled to be subrogated to all the rights of the mortgagee and he or his assignees could enforce foreclosure.

SUBROGATION—EXTENT OF DOCTRINE. The right of subrogation is not limited to sureties and quasi sureties, but is freely applied by courts of equity in all cases where good conscience and equity dictate that a debt paid by one under any sort of legal coercion ought to be paid by another.

Appeal from a judgment of the superior court for King county, Smith, J., entered February 10, 1914, upon findings in favor of the plaintiff, in an action to foreclose a chattel mortgage, tried to the court. Affirmed.

*Aust & Terhune* and *Miller & Lysons*, for appellant.

*Jno. Mills Day*, for respondent.

PARKER, J.—The plaintiff, University State Bank, commenced this action in the superior court for King county against the defendants Joseph Ellison, H. W. Steeves, and others, seeking foreclosure of a chattel mortgage executed by Ellison upon the personal property of a laundry plant in Seattle. The mortgage and the note it was given to secure became the property of the plaintiff through mesne assignments. The title to the mortgaged property passed to the defendant Steeves through mesne conveyances. Decree of

[1]Reported in 147 Pac. 645.

foreclosure being rendered by the superior court, and the mortgaged property ordered sold to pay the balance due upon the debt secured thereby, the defendant Steeves has appealed therefrom to this court.

The controlling facts may be summarized as follows: In June, 1908, the defendant Ellison, being then indebted to Sadie Saunders in the sum of $1,215, executed and delivered to her, as evidence thereof, his promissory note, and at the same time executed and delivered to her, to secure such indebtedness, a chattel mortgage upon the personal property of a laundry plant in Seattle then owned by him. This mortgage was duly filed for record in the office of the auditor of King county on August 4, 1908. On April 6, 1909, Ellison sold and conveyed the mortgaged property to Ellison's Hand Laundry, a corporation, by bill of sale in usual form, containing general covenants of warranty wherein he agreed to defend the title to the property against all lawful claims made thereon, *"except as to incumbrances now of record and known to party of the second part,"* the grantee. This exception from the covenants of warranty and agreement to defend the title on the part of Ellison, it is plain from the record before us, had particular reference to this mortgage and the comparatively small balance due thereon, which at that time was $216.60. The existence of this incumbrance was well known to the grantee as well as to Ellison. As a consideration for this conveyance of the mortgaged property, Ellison received from his grantee, the corporation, which had just been organized, a large proportionate amount of its capital stock, and as part of the transaction, he returned to the corporation a number of shares of this stock, to the end that it might be sold by the corporation to aid in liquidating the indebtedness of the business, which indebtedness included, among other things, this $216.60 balance due on this mortgage indebtedness. We mention this as being some affirmative evidence tending to show that there was consideration for this exception from Ellison's covenants of warranty and his agreement

to defend the title, though the conveyance with the exception expressly stated therein of itself, we think, imports a consideration therefor.

On April 14, 1909, Sadie Saunders sold and assigned the note and mortgage to the Northwest Trust and Safe Deposit Company. On February 14, 1910, Ellison's Hand Laundry sold and conveyed the mortgaged property to Chin Loy, who at the same time assumed and agreed to pay the balance due upon the mortgage indebtedness. On March 20, 1910, the balance due upon the note and mortgage not having been paid by Ellison's Hand Laundry or Chin Loy, the Northwest Trust and Safe Deposit Company appropriated from funds on deposit with it belonging to Ellison an amount equal to the balance due it upon the mortgage debt. This evidently was done at the time without Ellison's consent. Thereupon Ellison demanded and received from the Northwest Trust and Safe Deposit Company an assignment to himself of the mortgage, which assignment was duly executed and delivered to him together with the note. On March 21, 1910, Ellison, for the purpose of securing an indebtedness owing by him to respondent, University State Bank, assigned to it the note and mortgage. The title to the mortgaged property, through mesne conveyances, passed to the appellant Steeves, who was the owner thereof at the time of the commencement of this action and the rendering of the foreclosure decree therein, appellant's title being subject to the lien of the mortgage to the extent of the balance due upon the note secured thereby unless the assignment of the mortgage and surrender of the note to Ellison by the Northwest Trust and Safe Deposit Company resulted in extinguishing them both for all purposes, so that neither he nor the respondent, his assignee, could thereafter have any rights of subrogation thereunder.

The evidence tends to show, and the trial court so found, that appellant, Steeves, and all of his predecessors in interest since the making of the mortgage, actually knew of its existence and of the fact that the debt secured thereby had not

been wholly paid. We are inclined to accept the trial court's finding as to this fact, but in any event, there was at all times since the conveyance to Ellison's Hand Laundry this balance due upon the mortgage, and the mortgage was of record in the auditor's office and unsatisfied of record. This of itself is, in any event, sufficient to bind those who became interested in the property subsequent to the execution and recording of the mortgage.

Respondent rested its right of foreclosure upon the theory that, by virtue of Ellison's Hand Laundry accepting conveyance of the property from Ellison subject to the mortgage, Chin Loy's accepting conveyance of the property from Ellison's Hand Laundry subject to the mortgage and his agreeing at the same time to assume and pay the balance due thereon, and the taking of an assignment of the mortgage by Ellison with the surrender to him of the note from the Northwest Trust and Safe Deposit Company, Ellison, and in turn respondent, University State Bank, by subrogation became possessed of all rights of the Northwest Trust and Safe Deposit Company, so far as such rights might be enforced against the property by foreclosure of the mortgage to pay the balance due upon the debt secured thereby. This, apparently, was also the theory upon which the trial court rendered its decree of foreclosure in favor of respondent.

Appellant contends that the transfer of the note and mortgage by the Northwest Trust and Safe Deposit Company to Ellison upon its receiving from him the balance due thereon, was, in effect, a complete extinguishing of the debt evidenced by the note and secured by the mortgage, because of the fact that Ellison, as between himself and the Northwest Trust and Safe Deposit Company, was the principal debtor. This is a plausible theory, viewed superficially. It does not follow, however, that Ellison would be the principal debtor as between himself and some other person, fund or property liable for the debt, which person, fund or property Ellison might be entitled to have treated as the principal debtor so as to secure

for himself such subrogation rights as sureties are entitled to exercise.

We shall not rest our conclusion upon the fact that Chin Loy expressly assumed and agreed to pay the balance due upon the mortgage debt, since that assumption of the mortgage debt was not an agreement to which Ellison was a party. We shall proceed upon the assumption that Ellison's right of subrogation must rest upon the agreement to which he was a party, to wit, his conveyance to Ellison's Hand Laundry, whereby it took the title subject to the mortgage. If we should proceed upon the assumption that Ellison's grantee had agreed with him to assume and pay the balance due upon the mortgage debt as well as merely receiving the title subject to the mortgage, our problem might possibly be somewhat simpler and easier of solution. For then the answer would be found in the doctrine that:

"A mortgagor who, after selling the land to one who assumes and agrees to pay the mortgage debt, is compelled to pay the debt himself, is entitled to be subrogated to the rights of the mortgagee and may foreclose the mortgage for his own benefit, for the vendor becomes in effect the surety and the vendee the principal." 37 Cyc. 465.

This doctrine finds support in many decisions, among others that of *Orrick v. Durham*, 79 Mo. 174, where we find the following:

"Leaving then for the moment Durham out of view, had Orrick, who was primarily personally bound to Shaw for the $333.33 debt, paid the same off, either voluntarily or under compulsion, would he not, upon clear principles of equity, have been entitled to be subrogated to the rights of the mortgagee, Shaw? Does it make any difference, as suggested by respondent's counsel, that Orrick paid his own debt to Shaw? There is neither anomaly nor solecism in a mortgagor under certain circumstances, who pays his own mortgage debt, becoming subrogated to the rights of the mortgagee as against a subsequent incumbrance or purchase. In *Halsey v. Reed*, 9 Paige 446, 453, it was held in a case involving the principle under consideration, that if the mortgagor 'had paid the

amount of the bond and mortgage voluntarily to the present holders thereof, he would have had a right to demand an assignment of the same, to enable him to enforce payment out of the promises.' In *Stillman v. Stillman*, 21 N. J. Eq. 127, 129, it is expressly held that one may purchase his own mortgage on land that he has sold and although such purchase may render the bond unavailing, yet where lands are conveyed, as these were subject to the mortgage as part of the consideration, the mortgage is the principal security, and even if the mortgagor pays the bond, he is entitled to be subrogated as to the mortgagee, and to be repaid out of the land what he has paid on his own bond. *Kamena v. Huelbig*, 23 N. J. Eq. 78, is a clear enunciation of the same equitable principle. In short, this is now a well recognized feature of equity jurisprudence. Sheldon on Subrogation, §§ 24, 26; *Moore's Appeal*, 88 Pa. St. 450; 51 N. Y. 333.

"Another view of this question is pertinent. If a party owning land incumbered by mortgage for his debt, sells it to another, who, as a part of the purchase money, agrees to pay this mortgage debt, as between themselves the vendor becomes the security of the vendee for the mortgage debt. Brandt on Sur. and Guar., § 24. And in such case he is entitled, on payment of the debt, to be subrogated to the rights of the mortgagee and may to that end compel the assignment of the mortgage to him. This rests upon the principle that in equity the land becomes the primary fund for the payment of the debt. *Johnson v. Zink*, 51 N. Y. 333; 1 Story Eq., § 499."

Now since respondent is not seeking to hold appellant Steeves or any of his predecessors in interest under the mortgage personally liable, but is seeking merely to subject the mortgaged property, as being primarily liable, to the satisfaction of the balance due upon the mortgage debt, it seems to us that this doctrine is by analogy applicable here in support of respondent's claim of its right to have this mortgaged property so subjected to the payment of the balance due upon the mortgage debt. It seems to us that the doctrine is equally applicable whether the new principal debtor be an individual or whether some particular property or fund becomes primarily liable for the payment of the debt and in that sense

becomes the new principal debtor as between it and the original principal debtor. Nor are we without authorities lending support to this view.

In *Johnson v. Zink*, 51 N. Y. 333, there was involved a situation much like this, so far as the application of this doctrine thereto is concerned. In that case the conveyance was made "subject to the mortgage," though apparently it affirmatively appeared from other evidence that the mortgage debt was regarded as a part of the consideration of the purchase price. The grantor, being personally liable for the mortgage debt, took up the note and mortgage and sued to foreclose the same, claiming his right so to do by virtue of the doctrine of subrogation. Disposing of this branch of the case, the court said:

"The conveyance by the mortgagor of the mortgaged premises, '*subject to*' the mortgage in question, to Comstock conveyed to him the equity of redemption only, and consequently the mortgage was to be discharged and satisfied out of those premises, before any right or interest therein was acquired by the grantee, and as between those parties it is clearly equitable that such discharge and satisfaction should be made out of the said premises, and that the obligor and mortgagor should not, in exoneration thereof, personally be called upon to pay the same out of his individual property. The effect of the transaction was in equity to make the land the primary fund for the payment of the debt, and to place the plaintiff in the situation or relation of surety therefor only. This principle is clearly established. (See *Jumel v. Jumel*, 7 Paige 591-594; *Halsey v. Reed*, 9 id. 446-453 etc.; *Marsh v. Pike*, 10 id. 595; *Cherry v. Monroe*, 2 Barb. Ch. 618; *Ferris v. Crawford*, 2 Denio, 595; *Stebbins v. Hall*, 29 Barb. 524, 529, 538.)

"This relation between the mortgagor and his grantee does not deprive the obligee from enforcing the bond against the obligor. He is entitled to his debt, and has a right to avail himself of all his securities. Equity, however, requires that the obligor, on the payment of the debt out of his own funds, should be subrogated to the rights of the obligee, so that he can reimburse himself by a recourse to the mortgaged

premises for that purpose. This cannot prejudice the creditor, and it is clearly equitable as between the debtor and the owner of the land. He clearly has no right or color of right, justice or equity to claim that he, notwithstanding the conveyance of the property subject to the mortgage, and thus entitling him only to its value over and above it, should in fact enjoy and hold it discharged of the encumbrance, without any contribution toward its discharge and satisfaction, from the land. This equitable principle is fully recognized in most of the cases above cited. Indeed, it is so consistent with right and justice as to require no authorities to sustain it."

This view finds support in *Woodbury v. Swan*, 58 N. H. 380, and *Gregory v. Arms*, 48 Ind. App. 562. In the last cited case it is said:

"Where a person takes a deed to real estate subject to encumbrances thereon, he does not thereby become personally liable to discharge the preexisting liens, but, in the absence of any showing to the contrary, the purchaser is deemed to have deducted the amount of the prior encumbrances from the purchase price, and the land in his hands becomes the primary source of funds out of which the encumbrances are to be paid."

These remarks, and the authorities cited in connection therewith, are of interest here touching the question of the consideration for the exception from the covenants of warranty and agreement to defend the title. In this connection some contention is sought to be made touching the sufficiency of this consideration, which also seems to be an attack upon the conveyance from Ellison to Ellison's Hand Laundry, upon the theory that the par value of the stock given by Ellison's Hand Laundry, the corporation, to Ellison for the laundry exceeded the value of the property. This is a problem that might be of some interest were we dealing with the rights of creditors of Ellison's Hand Laundry in a bankruptcy or insolvency proceeding. It is, however, a matter wholly foreign to our present inquiry. Appellant has no right to complain of that conveyance. It manifestly was good as between Ellison and Ellison's Hand Laundry, the corporation, and rests

upon a sufficient consideration so far as the rights of appellant are concerned, and it plainly, we think, evidences an intent on the part of Ellison and Ellison's Hand Laundry that as between them Ellison should not be required to pay the mortgage debt, but that the property should answer therefor.

The doctrine of subrogation is not so restricted in its application as formerly. In *Murray v. O'Brien*, 56 Wash. 361, 105 Pac. 840, 28 L. R. A. (N. S.) 998, we said:

"The remedy is no longer limited to sureties and quasi sureties, but is freely applied by courts of equity in all cases where good conscience and equity dictate that a debt paid by one under any sort of legal coercion ought to be paid by another. *Arnold v. Green*, 116 N. Y. 566, 23 N. E. 1; *Parsons v. Urie*, 10 Am. & Eng. Ann. Cases 280 (104 Md. 238, 64 Atl. 927, 8 L. R. A. (N. S.) 559); Pomeroy, Equity Jurisp., §§ 798, 799; *In re Bruce*, 158 Fed. 123; Beach, Modern Equity, Jurisp., 802-804; *Twombly v. Cassidy*, 82 N. Y. 155; *Kinkead v. Ryan*, 65 N. J. Eq. 726, 55 Atl. 730."

Our more recent decision in *Pease v. Syler*, 78 Wash. 24, 138 Pac. 310, lends support to these views.

We conclude that the trial court properly disposed of the cause, and its judgment is therefore affirmed.

MORRIS, C. J., HOLCOMB, MOUNT, and CHADWICK, JJ., concur.