[No. 15190.   Department Two.   April 1, 1919.]

F. E. MOODY, *Plaintiff*, v. WM. ISSELSTEIN *et al.,*
*Respondents*, MARTIN STEINBERGER, *Appellant*.[1]

SUBROGATION (4)—PROTECTION OF INTEREST IN LAND—"VOLUNTEER."
A wife, who had been deserted and who was living on separate prop-
erty of the husband which was subject to a mortgage, has such an
interest or expectancy therein that she is not a mere volunteer in
paying off the mortgage; and having done so, she is to be sub-
rogated to the rights of the mortgagee, as against a second mortgage
given by her husband without notice to her, after the desertion and
while the first mortgage stood unsatisfied of record and payments
thereon were unknown to the second mortgagee.

Appeal from a judgment of the superior court for
Lewis county, Reynolds, J., entered September 3, 1918,
upon findings establishing the priority of liens, in an
action to foreclose a mortgage, tried on the merits
to the court.   Affirmed.

*W. W. Langhorne,* for appellant.

*A. A. Hull* (*C. A. Studebaker,* of counsel), for re-
spondents.

MOUNT, J.—This action was brought to foreclose a
mortgage upon certain real estate in Lewis county.
It resulted in a decree of foreclosure and an order of
sale directing the plaintiff's mortgage to be first sat-
isfied out of a sale of the real estate; that Elizabeth
Isselstein have a second lien of $732; and that Martin
Steinberger have a lien subsequent to Mrs. Isselstein's
for $338.   The defendant Steinberger appeals from
that part of the decree making his mortgage lien sub-
sequent to that of Mrs. Isselstein.

The facts are as follows:  In the year 1907, Will-
iam Isselstein, at that time being unmarried and the

[1]Reported in 179 Pac. 855.

owner of the real estate in question, executed seven promissory notes, each for $100, payable to J. E. Jones, and to secure the payment of these notes Mr. Isselstein executed a mortgage upon his real estate. This mortgage was duly recorded in Lewis county. Thereafter, in the year 1912, Mr. Isselstein was married to respondent Elizabeth Isselstein and they went to live upon the mortgaged property. In the year 1913, Mr. Isselstein deserted his wife and has ever since remained away from her. She has continued to live upon the property. In November, 1914, Mrs. Isselstein, out of her separate funds, paid six of the $100 notes which Mr. Isselstein before his marriage had executed to Mr. Jones. In August, 1915, William Isselstein, after having deserted his wife and without her knowledge, gave to Martin Steinberger a note and second mortgage for $266 upon the property upon which Mrs. Isselstein was then living. This mortgage was duly recorded in the auditor's office of Lewis county.

In 1917, Mrs. Isselstein obtained a decree of divorce and the land in question was awarded her as her separate property. The remaining Jones note for $100 and the original mortgage were assigned to F. E. Moody. Mr. Moody brought this action to foreclose this mortgage. William Isselstein, Elizabeth Isselstein and Martin Steinberger, the second mortgagee, were made parties defendant. Martin Steinberger filed an answer and cross-complaint attacking the first mortgage upon several grounds, one of which was that the action was not brought within the period of the statute of limitations. Mrs. Isselstein defended against both mortgages, alleging that the land in question at the time the second mortgage was given was community property, and therefore the second

mortgage was void. Upon a trial the court found that there was due upon the first mortgage $100, with interest and costs, and that Mrs. Isselstein, having paid $600 upon that mortgage to protect her interest in the land, was entitled to be subrogated so that her claim should be second to that of the first mortgage; that the second mortgage was a valid mortgage, but was subsequent to the first mortgage and to the amount due to Mrs. Isselstein, and entered a decree to that effect. Martin Steinberger appeals from that part of the decree making Mrs. Isselstein's claim prior to the second mortgage.

If we understand the appellant's position correctly, it is that, when these two mortgages were given, the mortgaged property was the separate property of William Isselstein and the mortgages were valid mortgages of Mr. Isselstein's interest in the land, and that whatever interest Mrs. Isselstein now has was acquired after these mortgages, and therefore her interest is subsequent to the mortgages. Appellant seems also to argue that the payment by Mrs. Isselstein of the six notes for $100 each was not made to protect her interest in the land, but was made by her as a mere volunteer for her husband's benefit, and therefore she could not be subrogated to the rights of the original mortgagee. The appellant also contends that, because the court concluded that Mrs. Isselstein had a "community interest" in the property, she was not entitled to be subrogated to the rights of the original mortgagee.

It appears that the original mortgage was given by Mr. Isselstein while he was the separate owner of the real estate. It appears that the second mortgage was given by Mr. Isselstein without the knowledge of his wife, prior to the divorce. After marriage, in

1912, Mrs. Isselstein went to live upon the property with her husband. She has lived there ever since. Her husband deserted her in the year 1913. Afterwards, in the year 1914, in order to protect her interest in the land, she paid from her separate funds $600 on the first mortgage. The mortgage apparently stood of record for the original amount without showing the payment. When Mr. Steinberger took his mortgage from Mr. Isselstein without notice to Mrs. Isselstein, the original mortgage was of record. Whether the interest of Mrs. Isselstein in the land at that time was, in law, a community interest, we need not now consider further than to say that her husband owned the land as separate property, that she was living upon the land and certainly had some interest or expectancy therein. We are satisfied that she was justified in making the payment of $600 upon the mortgage in order to protect whatever interest or expectancy she had, and that, in equity and justice, she should be subrogated to the rights of the original mortgagee to the extent of that payment. In the case of *Murray v. O'Brien*, 56 Wash. 361, 105 Pac. 840, 28 L. R. A. (N. S.) 998, we said at page 371:

"The pleadings and the proofs show that respondent has a valid and subsisting interest in the property, and its right to protect that interest in any manner or by any method sanctioned by the law cannot be questioned. The right of subrogation under the better rule applies in cases where a party who has an interest in the property and who does not stand as a mere volunteer pays a debt owing in whole or in part by another, to protect his own rights or to save his own property. The remedy is no longer limited to sureties and *quasi* sureties, but is freely applied by courts of equity in all cases where good conscience and equity dictate that a debt paid by one under any sort of legal coercion ought to be paid by another."

See, also, *Netherlands American Mortgage Bank v. Grafke,* 100 Wash. 188, 170 Pac. 876; and *University State Bank v. Steeves,* 85 Wash. 55, 147 Pac. 645. Under the rule in these cases, which is a just and equitable rule, the trial court properly allowed the subrogation of Mrs. Isselstein to the rights of the original mortgage to the extent of her payment upon that mortgage. When the appellant Steinberger took his second mortgage he did not know, and had no reason to believe, that $600 of the original mortgage had been paid; and it works no injustice to him to now hold that Mrs. Isselstein, who certainly had some sort of an interest in the property, should be allowed to be subrogated for the amount of her payment therein. No injustice is worked to appellant by means of this subrogation.

The judgment appealed from must therefore be affirmed.

CHADWICK, C. J., PARKER, FULLERTON, and HOLCOMB, JJ., concur.