CLAYTON et al. v. FORT WORTH STATE BANK OF FORT WORTH, TEX., et al.

(Circuit Court of Appeals, Fifth Circuit. March 17, 1925. Rehearing Denied April 13, 1925.)

No. 4286.

**1. Chattel mortgages ⬤⟳226—Evidence held not to support finding that purchaser did not agree as part of price to pay mortgage debt.**

In mortgagor's action against purchaser of mortgaged cattle and subsequent mortgagees for subrogation to prior mortgagee's rights after payment by him of balance of mortgage debt evidence *held* insufficient to sustain finding that purchaser did not agree as part of price to pay the mortgage debt.

**2. Chattel mortgages ⬤⟳226—Buyer of mortgaged goods, who agrees to pay mortgage debt, becomes as between buyer and seller, mortgagee's principal debtor.**

Buyer of mortgaged property, who obligates himself as part of the price to pay mortgage debt, becomes as between buyer and seller the principal debtor to mortgagee, the seller becoming buyer's surety.

**3. Subrogation ⬤⟳18—Mortgagor, who is compelled to pay debt after assumption by purchaser, is entitled to subrogation to mortgagee's rights.**

Mortgagor, who is compelled to pay off mortgage debt after third person to whom he has sold goods has agreed, as part of price, to pay debt, is entitled to be subrogated to mortgagee's rights, and to have property subjected to payment of the amount of the mortgage debt.

Appeal from the District Court of the United States for the Northern District of Texas; James C. Wilson, Judge.

Action by R. M. Clayton, Jr., and others against the Fort Worth State Bank of Fort Worth, Tex., and others. Judgment for defendants, and plaintiffs appeal. Reversed.

S. C. Rowe and Dayton Moses, both of Fort Worth, Tex., for appellants.

P. G. Dedmon, Morgan Bryan, and B. L. Agerton, all of Fort Worth, Tex. (Cooke, Dedmon & Potter, Clay Cooke, P. G. Dedmon, F. B. Potter, and W. B. Pinney, all of Fort Worth, Tex., on the brief for appellee J. L. Chapman, and Bryan, Stone, Wade & Agerton, B. L. Agerton, and J. B. Wade, all of Fort Worth, Tex., on the brief for appellee Fort Worth State Bank), for appellees.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

WALKER, Circuit Judge. In May, 1920, the appellants, Clayton, Elwood & Arnett, mortgaged to the North Texas Trust Company a described lot of steers and also described cows and calves to secure an indebtedness of $68,250. Thereafter appellants sold the mortgaged steers to Frank Corn, and Corn executed two mortgages of the steers to secure debts owing by him. In December, 1921, the appellants, pursuant to a demand of said trust company, paid the balance then owing on the debt secured by appellants' mortgage. In this suit, to which the holders of the two mortgages given by Corn were parties, the appellants asserted the right to be subrogated to all the rights in and to said steers, which said trust company had by virtue of appellants' mortgage, to the extent of the balance of the debt secured thereby, which was paid in December, 1921, as above stated. The right to subrogation was based on the claim that Corn, under the terms of his purchase of the steers, was obligated to pay the above-mentioned balance of the debt secured by the mortgage given by the appellants. The denial by the decree appealed from of the asserted right to subrogation was the result of a finding, made by a master and approved by the court, to the effect that Corn, by his contract for the purchase of the steers, did not obligate himself to pay the whole or any part of the debt secured by the mortgage given by the appellants.

[1] Uncontroverted evidence was to the following effect: Early in July, 1920, the above-mentioned steers, which for some time had been on a pasture owned by Corn, were bought by him from the appellants at $57.50 a head, which, according to the understanding of the appellant who acted for himself and his partners in making the sale, amounted to more than the sum then owing on the debt secured by the above-mentioned mortgage of appellants. By the terms of the sale Corn was to pay the amount so understood to be then owing on the note secured by appellants' mortgage, which amount Corn was told would be $50,000 or $55,000, or get the mortgagee to take his paper, instead of that of the appellants, and he was to pay appellants the difference, or give his note therefor to Arnett, one of the appellants, Arnett agreeing to accept such note and give his partners credit for their shares of the amount thereof. The North Texas Trust Company refused to accept Corn's paper in place of that of the appellants. On October 28, 1920, Corn wrote and sent a letter to Arnett, of the body of which the following is a copy:

"I received your letter with reference to the loan on the steers. I have been to see the North Texas Trust Company, and they say that they will not make me a new loan on the cattle, but that they will carry $50,000 as a renewal for you and your associates, as their bank will be willing to renew, but will not make a new loan to any one. If you will help me finance this deal, I will give you whatever part of the profits that you want, and stand all of the losses, if there is any. You had better make the paper for 6 months. Am sure that I can take care of it before that time. I will on December 1st have 52,000 acres of the Watts ranch paid for, and am figuring with a loan company to make me a loan on it, so that I will have plenty of money to operate on without having to put up the cattle. Mr. Waddell promised me that he would renew this loan when it came due. Since he has left the company, it has put me in an embarrassing position. Had I have known this, I should have not bought the cattle."

On November 3, 1920, Arnett and Corn met at the Metropolitan Hotel in Fort Worth. Their testimony is the sole evidence as to what occurred on that occasion. Results of their conversation at that time were that Corn gave Arnett a check for $2,500, and executed two notes, each dated November 3, 1920, one for $50,000, payable to Clayton & Arnett on May 3, 1921, with 10 per cent. interest from maturity, and the other for $13,429, payable six months after date to the order of Arnett, with interest at 10 per cent. per annum from date. Testimony of Arnett was to the effect that the $2,500 check was given to pay in advance six months' interest on a $50,000 balance of the debt secured by appellants' mortgage, that Corn's $50,000 note was given to be used as collateral with appellants' paper held by the

trust company, and that the $13,429 note was for the difference between $50,000 and the price of the steers. Corn's testimony as to what occurred on that occasion varied in some particulars from that of Arnett, but his testimony had no tendency to prove that a new contract was substituted for the one entered into in the preceding July, that the giving and acceptance of the $50,000 note were to have the effect of canceling or satisfying Corn's obligation, either to pay the balance of the debt secured by the mortgage of the appellants or to procure the substitution of his paper for that of the appellants, or that that obligation of Corn was changed or modified in any respect. Nothing in the testimony of either of the witnesses mentioned indicated that the subject of changing the previously made contract or making a new one was suggested or considered. We conclude that no evidence adduced warranted the above-mentioned finding made by the master and approved by the court.

[2, 3] Where, on a sale of mortgaged property, the buyer, as part of the consideration or price agreed on, obligates himself to pay the debt secured by such mortgage, as between the buyer and seller, the buyer becomes the principal debtor to the mortgage creditor, and the seller becomes the buyer's surety. If, while such relation exists between the seller and buyer, the former is compelled to pay off the mortgage debt, he is entitled to be subrogated to the rights of the mortgagee, and to have the property subjected to the payment of the amount of the mortgage debt. Henson v. Reed, 71 Tex. 728, 10 S. W. 522; Wood v. Smith, 51 Iowa, 156, 50 N. W. 581; 25 L. R. A. 1373; 37 Cyc. 465.

We conclude that the court erred in disallowing the claim asserted by the appellants. Because of that error, the decree is reversed.