240 P.2d 168

**SMITH et ux. v. MANGELS et al.**

No. 5361.

Supreme Court of Arizona.

Jan. 21, 1952.

204

Udall & Udall, Tucson, for appellants.
Ashby I. Lohse, Tucson, for appellees.

STRUCKMEYER, Jr., Superior Court Judge.

This action was commenced by Elmer A. Smith and Icey M. Smith, his wife, as plaintiffs, appellants herein, against Ralph A. Mangels, real estate broker, Cora E. Atkinson, his saleswoman, and the United States Guaranty and Fidelity Company of Baltimore, Maryland, a corporation, surety for Mangels on his broker's license, to recover damages for failure to disclose certain material facts concerning the real estate transaction hereinafter set forth. The trial court directed a verdict in favor of the defendants at the conclusion of the plaintiffs' case and entered judgment thereon. From the order and judgment, plaintiffs appeal.

The record discloses that in June of 1948, appellants purchased the "Hob Knob" Cafe located in Tucson, Arizona. As part of the purchase price, they executed and delivered to William Bellios, the seller, their note and a chattel mortgage covering the cafe fixtures. This mortgage, herein referred to as the Bellios-Smith mortgage,

was not recorded in compliance with section 62–523, A.C.A.1939, which section provides that prior unrecorded mortgages are void as against subsequent mortgagees in good faith.

Thereafter appellants traded the cafe and fixtures to Cecil J. Foster and Sarah Margaret Foster, his wife, for the premises known as the "Bucking Bronco Motel" near Tucson. The Fosters assumed and agreed in writing to pay the balance of $750 due under the Bellios-Smith note and mortgage. Contemporaneous therewith, the Fosters executed and delivered a chattel mortgage covering the same fixtures to Mangels who acted as the mutual agent of both parties to the exchange. This latter mortgage was given with the knowledge and consent of the Smiths as payment for the Fosters' share of the real estate commission due to Mangels, and was recorded on the following day. The evidence strongly indicates that Mangels knew and the Smiths did not know that the Bellios-Smith mortgage was unrecorded.

Although the Fosters assumed and agreed in writing to pay the indebtedness secured by the Bellios-Smith mortgage, they subsequently defaulted. Bellios brought suit against the Smiths on the note without attempting to foreclose the chattel mortgage, and thereafter duly recovered a judgment.

The evidence tends to establish that payment of the judgment was beyond the immediate financial ability of the Smiths, and that as a result they were forced to liquidate the Motel at a loss. The claimed damages are $2,000 loss through sale of the Motel, $750 payment of the Bellios note, and $1,500, the amount of real estate commission paid to Mangels.

Appellants urge that Mangels, as their agent, owed to them the highest duty of good faith in his dealings; that this duty included the disclosure of all facts known to him and unknown to the Smiths; that it was known to Mangels and unknown to the Smiths that the Smith-Bellios mortgage was not recorded; that Mangels and Atkinson, as licensed real estate broker and saleswoman, respectively, familiar with deeds, mortgages and similar business transactions, knew, or should have known, that the legal effect of the nonrecordation of the Smith-Bellios mortgage gave him, Mangels, a superior position over them in the event of default by the Fosters in the payment of the Smith-Bellios indebtedness, in this, that the Smith-Bellios mortgage being void as against the Foster-Mangels mortgage, the Smiths could lose the security for the indebtedness.

Assuming, without deciding, that appellees Mangels and Atkinson are chargeable with knowledge of the legal effect of the statute 62–523, and assuming further that the failure to make a disclosure thereof constitutes a breach of fiduciary duty giving rise to a cause of action for the consequential damage, we are still unable to accept the appellants' postulate that the result of the nondisclosure was to deprive

the Smiths of their right of recourse against the security in the event the Fosters defaulted and the Smiths were compelled to pay.

■ It is a universally recognized rule that a mortgagor, who after having conveyed his interest is compelled to pay the principal debt, is equitably subrogated to the mortgagee's interests and succeeds to the mortgagee's rights. Some courts state this to be an equitable subrogation and some an equitable assignment. Notwithstanding the distinction, all courts agree that whatever rights the mortgagee had, payment by the mortgagor substitutes the mortgagor to the rights of the mortgagee. This is true both as to real and chattel mortgages. American Trust Company v. W. S. Doig, Inc., et al., 4 Cir., 23 F.2d 398. Clayton v. Fort Worth State Bank of Fort Worth, Texas, et al., 5 Cir., 4 F.2d 763, Certiorari denied, 269 U.S. 555, 46 S.Ct. 18, 70 L.Ed. 408. Bank for Seamen's Savings et al. v. Smadbeck, 293 N.Y. 91, 56 N.E.2d 46. Stein v. McAuley, 147 Iowa 630, 125 N. W. 336, 27 L.R.A.,N.S., 692, 140 Am.St. Rep. 332. Green v. Bass, 83 Ohio St. 378, 94 N.E. 742, Ann.Cas.1912A, 828. University State Bank v. Steeves, 85 Wash. 55, 147 P. 645, 2 A.L.R. 237. Barnes et ux. v. Ganss et al., Mo.App., 72 S.W.2d 884. McKleroy v. Dishman, 225 Ala. 131, 142 So. 41.

The following statement is illustrative: "Where, on a sale of mortgaged property, the buyer, as part of the consideration or price agreed on, obligates himself to pay the debt secured by such mortgage, as between the buyer and seller, the buyer becomes the principal debtor to the mortgage creditor and the seller becomes the buyer's surety. If, while such relation exists between the seller and buyer, the former is compelled to pay off the mortgage debt, he is entitled to be subrogated to the rights of the mortgagee, and to have the property subjected to the payment of the amount of the mortgage debt." Clayton et al. v. Fort Worth Bank of Fort Worth, Texas et al., supra [4 F.2d 765].

In the instant case, the appellants as the mortgagors, traded the mortgaged property to the Fosters. The Fosters, who are not parties to this action, did not repay the principal sum as they assumed and agreed to do. Appellants did so under legal compulsion. Hence, the appellants were equitably subrogated to the rights of the mortgagee. They could have foreclosed the mortgage and subjected the chattels to payment of the debt. The security for the debt was, therefore, not lost to appellants unless appellees are mortgagees in good faith.

■ As indicated, the statute 62–523 requires that the subsequent mortgage be made in *good faith*. It is generally assumed that this statute was adopted from the state of Texas, Moore v. Chilson, 26 Ariz. 244, 224 P. 818, where it has long been held that a chattel mortgage is good as between the parties and those having

actual knowledge of its existence. Sorenson v. Dawdy, Tex.Civ.App., 196 S.W.2d 687; Freiberg v. Magale, 70 Tex. 116, 7 S.W. 684. Mangels, having actual notice of the Smith-Bellios mortgage is not a mortgagee in good faith within the meaning of this section, and no priority existed in his favor as against the Smiths.

We are not unaware of the statements made by this court in Lewis v. Hornback, 28 Ariz. 546, 237 P. 952, that a party can either sue on the note, waiving the mortgage, or he can sue to foreclose the mortgage, but not both, and citing in support thereof, paragraph 4115 R.S.A.1913, Civ. Code. This paragraph, now slightly changed by rewording, section 62–516, A.C.A.1939, provided: "If separate actions are brought on the debt and to foreclose the mortgage given to secure it, plaintiff must elect which to prosecute. The other will be discontinued at his cost."

■■ Obviously, the election required by this section is limited to the circumstance where both actions are pending simultaneously. Equally obvious, a mortgagee-creditor has two rights, first, to have the debt paid, and second, a separate and independent right, to have the debt paid out of the proceeds of the sale of the mortgaged property. The Supreme Court of Iowa in speaking of a nearly identical statute stated: "This statute substantially in its present form has appeared in all of the Codes that have ever existed in this state. It has never, however, been construed so as to prevent the holder of a mortgage from suing at law upon notes held by him and secured by such mortgage and subsequently prosecuting an action in the same county in equity for the purpose of enforcing the lien of the mortgage. On the contrary, we have repeatedly held against the contention of appellant at this point, but without direct reference to the statute." Hamilton v. Henderson, 211 Iowa 29, 230 N.W. 347, 348.

■ We are therefore of the opinion that Bellios did not waive the mortgage by his action on the note, and that the Smiths, who succeeded to Bellios' rights by payment of the indebtedness, also succeeded to the right to have the security applied to satisfy the debt, and that since the nondisclosure did not result in the loss to appellants of their security, no damage results therefrom and no cause of action arises.

The order and judgment of the trial court are affirmed.

STANFORD, PHELPS, DE CONCINI and LA PRADE, JJ., concur.

Chief Justice LEVI S. UDALL, being disqualified, the Honorable FRED STRUCKMEYER, Jr., Judge of the Superior Court of Maricopa County, was called to sit in his stead.