UNITED AMERICAN LIFE INSUR-
ANCE COMPANY, a Colorado
corporation, Plaintiff-Appellee,

v.

F. J. PERILLO and Ruth E. Perillo, hus-
band and wife, Defendants-Appellants.

No. 25676.

United States Court of Appeals,
Ninth Circuit.

June 6, 1972.

Rehearing Denied July 24, 1972.

Sidney Weissberger, Tucson, Ariz., Raymond F. Hayes, of Johnson, Darrow, Hayes & Morales, Tucson, Ariz., for defendants-appellants.

Adolph O. Johnson, G. Marshall Jones, of Holesapple, Conner, Jones, McFall & Johnson, Tucson, Ariz., for plaintiff-appellee.

Before WRIGHT and TRASK, Circuit Judges, and BYRNE, Sr.,* District Judge.

TRASK, Circuit Judge:

This is an appeal from an order of the district court awarding the plaintiff a money judgment. The district court had jurisdiction of the action under 28 U.S.C. § 1332 (Diversity of Citizenship), the action being between the plaintiff, a citizen of Colorado, and the defendants, citizens of states other than Colorado, and involving a sum exceeding $10,000. This court has jurisdiction of the appeal under 28 U.S.C. § 1291.

## FACTS

In 1961, Mr. and Mrs. F. J. Perillo (Perillos) owned a parcel of land in Tucson, Arizona, which they decided could profitably be used as the site for a bowling alley. Toward that end they formed an Arizona corporation, Diamond Pin Lanes, Inc. (Diamond), acquiring all of the stock in that corporation by conveying all of their interest in the realty to the corporation in exchange for it. Mr. Perillo became president of the corporation and his wife became its secretary.

In return for a loan from the plaintiff, United American Life Insurance Company (United), for construction of improvements, Diamond and the Perillos executed and delivered a promissory note to United in the amount of $260,000. To secure the note, Diamond simultaneously executed and delivered to United a realty mortgage dated May 5, 1961. The Perillos did sign the mortgage as corporation officers, but not in their individual capacities. At the date of the mortgage, the Perillos did not own the realty described in it; the realty was owned by Diamond. At the date of the commencement of the action, Tucson Athletic Club, Inc. (Tucson), was the owner of the realty.

On or about January 10, 1962, a new note was executed by the Perillos to reflect the fact that a $250,000 United life insurance policy on the life of Mr. Perillo, which had been assigned to United as additional security, was converted into two policies of $125,000 each on the respective lives of Mr. and Mrs. Perillo.

The note was a simple form of installment note which did not refer to the specific mortgage or by its terms obligate the makers to perform its covenants and conditions. It contained an acceleration clause, or at the option of the holder, the right to capitalize delinquent interest as principal, and a waiver of presentment for payment, or protest, and an agreement for extension of time of payment and for payment of attorney's fees.

In May 1963, the Perillos sold all of their stock in Diamond to J. Greenwell for cash and a note. At that time the mortgage loan by plaintiff was current, the balance being $246,930.69. Subsequently, Diamond and Greenwell entered into an assumption agreement under which Greenwell assumed and agreed to pay the indebtedness represented by the

* Honorable William M. Byrne, Sr., United States Senior District Judge, Central District of California, sitting by designation.

note and mortgage. United was not a party to this agreement although it was notified of it.

Later, the stock in Diamond changed hands twice, but payments were not kept current and plaintiff capitalized interest, paid delinquent taxes and insurance premiums, and added the payments to the principal balance due on the promissory note. In February 1966, Diamond filed a voluntary petition for reorganization and United agreed to lend to Tucson, the then owner of the property, an additional sum of money. Those parties entered into an extension agreement on the note on August 4, 1966, and fixed the current amount due at $334,475.52.

Defaults continued, and United brought an action in 1968, to foreclose its mortgage, joining some seventeen defendants, including the Perillos who were personally served. Thereafter, the plaintiff and Perillos entered into a stipulation wherein the issue of the Perillos' liability on the promissory note would be severed from other issues in the plaintiff's complaint and heard after the execution sale following foreclosure. The judgment in the foreclosure action contained no provision for a deficiency judgment. It granted a recovery to United against Diamond and Tucson, and each of them, in the amount of $450,704.08 plus $25,000 in attorneys' fees and $516.-50 in costs.[1]

At the execution sale on October 30, 1968, the plaintiff bought the property for the sum of $392,300. This amount was applied to the amount of the judgment and the difference, plus additional costs and expenses, is the subject of the present action against the Perillos.

The district court made findings of fact and conclusions of law, concluding that the Perillos, as co-makers of the promissory note, were liable to plaintiff in the sum of $94,577.83, which was the balance unpaid as of November 1, 1968, after crediting the proceeds of the execution sale for the sum of $392,300 against the then balance due on the note. Further adjustments of costs and expenses resulted in a final judgment in favor of United and against the Perillos in the amount of $103,698.81, plus $5,000 attorneys' fees.

The appellants' arguments here are basically:

1. The foreclosure judgment, which was based upon the note, extinguished that debt and no further action could be maintained on the note.

2. There was an election of remedies under Arizona statutory law when plaintiff chose to foreclose the mortgage, which precludes additional recovery on the note.

3. The extension agreement between plaintiff and Tucson constituted a material alteration of the note which discharged appellants who were then in the position of sureties.

4. The liability of the Perillos under the note did not extend to the charges contained in the mortgage.

■ The first contention of appellants is that the court "had no power" to proceed under the stipulation to determine the Perillos' liability. They argue that once the decree of foreclosure was entered the only authority remaining in the court was to determine the existence of a deficiency judgment. Neither the cases cited nor the statutes referred to support appellants' argument.

■ The foreclosure proceeding is one to apply a security to a debt. If it is insufficient, the creditor may pursue any other legal means available to make himself whole. Here, the plaintiff's complaint asserted a claim against the Peril-

---

1. This sum is composed of the balance due on the principal of the promissory note, plus unpaid but capitalized interest, accrued interest, delinquent taxes, insurance premiums, advances to the Receiver during the Receivership, a payment to the Arizona State Liquor Department for a license renewal, and a payment for a title policy in 1968. "Advances to receiver" appear to be sums advanced by United to the Receiver and added by United to the principal balance due on the installment note.

los on the promissory note as well as a claim against several parties for foreclosure of the mortgage. The stipulation simply established the time at which this claim of the Perillos' liability on the note would be tried.

The second contention made by appellants is that the decision of United to foreclose the mortgage constituted an election under Ariz.Rev.Stat. § 33–722, which precluded additional recovery on the note.[2]

■ The policy underlying the statute, and similar statutes elsewhere, appears to be that several actions should not be filed to determine the rights of the creditor where a determination may be made in one. Arizona Title Ins. & Trust Co. v. Kelly, 11 Ariz.App. 254, 463 P.2d 838, 839 (1970). It seems clear from the decisions in Arizona that the statute applies only if separate actions have been brought and both are pending simultaneously. Smith v. Mangels, 73 Ariz. 203, 240 P.2d 168, 170 (1952); Arizona Title Ins. & Trust Co. v. Kelly, *supra*.

Here, there was but one suit filed. Under Count One, against Diamond, the Perillos, Greenwell and Tucson, it sought recovery of all sums due on the installment note, foreclosure of the real estate mortgage, and a deficiency judgment. The Perillos answered denying liability and asserting numerous affirmative defenses. It was at this point in the lawsuit that plaintiff and the Perillos entered into a formal stipulation severing the question of the personal liability of the Perillos until after the execution sale following the decree of foreclosure.

■ The plaintiff obtained a default judgment against Diamond and a summary judgment against Tucson, in the sum of $477,220.58, and a decree foreclosing the realty mortgage. This decree did not provide for any deficiency judgment. It was thereafter, and pursuant to

Perillos' own stipulation, that a hearing was held on their personal liability. Thus, there were no "separate actions" brought, and Ariz.Rev.Stat. § 33–722 has no application on the facts disclosed here.

Another argument of the appellants is that the extension agreement between United and Tucson constituted a material alteration of the note and discharged appellants from their obligation on the note. The Perillos became sureties with Tucson as the primary debtor, it is urged, when Tucson assumed payment of the mortgage. Extension of the time of payment by United to Tucson thus released appellants, or constituted a novation which had the same effect.

Appellants cite numerous authorities in support of their legal position. All of them in point on the fact situation confronting us are from jurisdictions other than Arizona. Here, we must look to the decisions of the courts of Arizona.

Among its conclusions of law, the district court determined that the extension agreement did not constitute either a novation or a material alteration so that it discharged the Perillos from their liability. The court relied upon Shiflet v. Marley, 58 Ariz. 231, 118 P.2d 1107 (1941); Young v. Carr, 44 Ariz. 223, 36 P.2d 555 (1934); and Mortgage Guarantee Co. v. Chotiner, 8 Cal.2d 110, 64 P.2d 138 (1956).

In Young v. Carr, *supra*, the Arizona Supreme Court held that an accommodation signer of a promissory note becomes a maker and is obligated to pay regardless of action taken against a co-maker; and that even though he might be a surety as between himself and his co-maker, yet as between himself and the payee, he is a maker and is primarily liable.

■ In Shiflet v. Marley, *supra*, the creditor made a loan which was evidenced by a promissory note and secured by a mortgage on real property. The debtor sold subject to the mortgage and the

2. Ariz.Rev.Stat. § 33–722 provides as follows:

"If separate actions are brought on the debt and to foreclose the mortgage given to secure it, the plaintiff shall elect which to prosecute and the other shall be dismissed."

grantee entered into an extension agreement with the creditor and assumed the payment of the note and mortgage. The original borrower, who had neither known about nor consented to the extension agreement, contended that it released him from his original obligation on the note. The court held that it did not. It affirmed Young v. Carr, *supra*, stating that one who is primarily liable on a note was not released by an extension of time given to another who was also primarily liable. It also held that there was no novation unless the agreement was one between three parties, the debtor, the creditor and the intended new debtor, wherein all agreed that the liability of the new debtor was substituted for that of the original debtor and the original debt extinguished. An examination of the extension agreement in the present case clearly shows there was no release of the original debt and substitution of the new. We agree with the conclusion of law of the trial court.

The perplexing problem posed in this case is created by the fact that the Perillos signed the promissory note but did not sign the mortgage. The note contained no provision obligating the makers of the note to pay the mortgage obligations. There was no claim to reform the note or the mortgage to put the Perillos in the position of obligors of the covenants in the mortgage. Both parties agreed that the Perillos did not sign the mortgage in their individual capacities and the court so found. The court made no finding either of fact or of law that appellants were mortgagors, or obligated upon the mortgage covenants.

The mortgage has the usual covenants in such an instrument obligating the mortgagor to pay all taxes, assessments and charges upon the real estate, to insure at his own cost, and keep insured against damage by fire or other hazards, the buildings on the premises, to keep all improvements in good repair and similar provisions. This instrument was executed only by Diamond, the owner of the real property mortgaged, but at the instance of the Perillos, who were then the

sole owners of all of the issued and outstanding common stock. The Perillos sold all of their stock in the corporation in May 1963, and from that date to date of foreclosure had no financial interest in either the land or the corporations operating the bowling alley constructed on it. The unpaid balance on the note at the time they sold their stock was $246,960.69, and the payments on the loan were current.

Thereafter, the plaintiff as mortgagee charged not only unpaid principal installments and unpaid interest against the balance due on the note, but it also charged all advances it made for payments because of the delinquency of the mortgagor, i. e., taxes and insurance. In addition, it charged against the note advances for sums for which there is no provision made in the mortgage such as advances for a liquor license renewal and loans which it made to the Receiver of the bowling alley which was operating the premises.

In each instance an account and report was filed on behalf of the Receiver detailing his expenditures, and a petition for approval together with a request for approval of any unusual expenditures were also filed. No objection was made by the Perillos either to the appointment of the Receiver or to any of the expenditures in the accounts and reports, although copies of all documents were served on them. Upon sale of the property, the money borrowed by the Receiver under order of the court for payment of taxes, insurance and operation of the Receivership were deducted and the balance credited to the sums due on the note.

Although it may appear to appellants that they are being charged for expenditures they did not agree to pay, this is not correct. The security which appellants furnished or caused to be furnished to guarantee the original loan was gradually depleted. It was depleted by an unsuccessful business operation which appellants set in motion. When the security was finally sold, it simply did

not produce enough money, after expenditures, to pay the note. We find nothing in the record nor in the arguments and authorities produced by appellants which can merit any alteration in the judgment and it is therefore affirmed.